**BARNETT et al. v. BOWLES,**
Price Administrator.

**SPIERS v. SAME.**

Nos. 187, 210.

United States Emergency Court of Appeals.

Heard at Biloxi, Miss., April 4, 1945.

Decided Aug. 29, 1945.

Writ of Certiorari Denied Nov. 13, 1945.

See 66 S.Ct. 168.

MARIS, Chief Judge, dissenting.

———◇———

Charles B. Cameron and Victor W. Gilbert, both of Meridian, Miss., for Barnett complainants.

T. J. Wills and Dick Wooten, both of Hattiesburg, Miss., and Henry Mounger, of Columbia, Miss., for complainant Spiers.

John O. Honnold, Jr., Sp. Asst. to Associate Gen. Counsel, Office of Price Administration, of Washington, D. C. (Richard H. Field, Gen. Counsel, and Nathaniel L. Nathanson, Associate Gen. Counsel, and Betty L. Brown, Atty., all of the Office of

Price Administration, all of Washington, D. C., on the brief), for respondent.

Before MARIS, Chief Judge, and MAGRUDER and McALLISTER, Judges.

McALLISTER, Judge.

These two cases present a common question: Whether the Price Administrator has authority to issue a maximum price regulation applicable to sales of intoxicating liquors in the state of Mississippi. Complainants in both cases have been indicted for selling liquor above the maximum prices established by Maximum Price Regulation No. 445. Spiers filed a petition with this Court to vacate the Administrator's order of denial of his protest, challenging the validity of the regulation in question. The Barnett complainants, after their indictments, arraignments and pleas, filed application in the District Court of the United States for the Eastern Division of the Southern District of Mississippi, for leave to file complaint against the Administrator in the United States Emergency Court of Appeals pursuant to Section 204 (e) of the Emergency Price Control Act, 50 U.S.C.A.Appendix § 924(e). Leave was granted and a complaint asking this Court to declare the regulation establishing maximum prices for intoxicating liquors in Mississippi invalid was thereafter accordingly filed. It is with these two complaints, filed by Spiers and by the Barnetts, that we are here concerned.

Before discussing the arguments of complainants, and at the outset of our consideration of the legal proposition submitted for determination, it should be stated that pursuant to the Twenty-First Amendment to the Federal Constitution, the State of Mississippi has enacted laws prohibiting the sale, importation, manufacture or use of intoxicating liquors for beverage purposes, and has declared that all property rights in such liquors were abolished.

The contentions of complainants may be summarized as follows: That the Twenty-First Amendment to the United States Constitution precludes Congress from regulating the sale of intoxicating liquor in the State of Mississippi; that it was the intention of Congress to exclude from the scope of the Emergency Price Control Act all control over the price of intoxicating liquor which is contraband under state law; and that the application of maximum price regulations to the sale of intoxicating liquors in the state of Mississippi would operate as an authorization of the sale of liquor in that state at such maximum prices.

With respect to the last contention above-mentioned, complainants say that if the maximum prices on intoxicating liquor are given effect in Mississippi, the result would be that liquor could be sold there in accordance with such prices. In this regard it is pointed out that in the Emergency Price Control Act, "maximum price" is defined as "maximum lawful price." Sec. 302(i), 50 U.S.C.A.Appendix § 942(i). It is submitted that Congress thereby intended to "prohibit the extension of a maximum price" to the sale of intoxicating liquor in a dry state, since, if there can be no maximum price unless it is a "maximum *lawful* price" there can be no maximum prices for the sale of liquor in a state where such sale is unlawful.

From the foregoing it is argued that the maximum price regulations in question, as applied to the sale of liquor in the state of Mississippi, are in contravention of the state prohibition laws, and Section 2 of the Twenty-first Amendment to the Federal Constitution, which provides: "The transportation or importation into any State, Territory, or possession of the United States for delivery or use therein of intoxicating liquors, in violation of the laws thereof, is hereby prohibited." Finally, it is urged that, in no event, may maximum prices for intoxicating liquors be established for the state of Mississippi in view of the fact that there was during the period October 1-15, 1941, no legal market price existent, to which the Price Administrator could refer, in ascertaining prevailing prices within the meaning of Section 2(a) of the Emergency Price Control Act, 50 U.S.C.A. Appendix § 902(a).

Contentions that the Twenty-first Amendment bars price control of intoxicating liquors under the Emergency Price Control Act have heretofore been disposed of, and rejected, in the case of Jatros v. Bowles, 6 Cir., 143 F.2d 453, wherein, after declaring that although the states are free under the Twenty-First Amendment to enact laws concerning the transportation within, or the importation into the state of alcoholic beverages, unfettered by the power delegated to the federal government to regulate commerce among the states and with foreign powers, it was declared that, nevertheless, the Amendment did not de-

prive the national government of all authority to legislate in respect of interstate commerce in intoxicants. With regard to the power of the Price Administrator to establish maximum prices of intoxicating liquors, the Court said that "the Price Control Act rests upon the war power. The Congress has constitutional authority to prescribe commodity prices as a war emergency measure * * *, and the Act was adopted in the exercise of that power. Neither expressly nor by implication was the war power abrogated or limited by the Twenty-first Amendment. Certainly, if there was power to impose national prohibition during war in 1918 there is power to invoke regulations to prevent war-time inflation and its disruptive causes and effects in 1944." 143 F.2d at page 455.

■ Referring to complainants' assertion that the price control regulation as applied to intoxicating liquors in Mississippi conflicts with the state prohibition law, which by virtue of the Twenty-first Amendment must be deemed to be here controlling, we are unable to discern any inconsistency between the establishing by the federal government, in the exercise of its war powers, of maximum prices on intoxicating liquor that is illegally sold in Mississippi, and the prohibition of its sale by the law of the state. The constitutional Amendment, insofar as here applicable, simply provides that the transportation or importation of intoxicating liquors into any state for delivery or use therein, in violation of state laws, is prohibited. The Emergency Price Control Act does not authorize or purport to authorize the sale or transportation or importation for delivery or use of intoxicating liquors into any state in violation of state laws. We find here no conflict in the operation of state and national regulation of intoxicating liquors. The establishing of maximum prices on liquor in Mississippi does not nullify the state law or legalize the sale of intoxicating liquors in that state. Rather, it is limited only to declaring that if intoxicating liquors are sold in any state— either where such sales are permitted or where they are prohibited—then they cannot be sold above the established maximum prices without incurring the penalties provided for violation of the Act. Under the price regulations, there is no attempt to authorize any transaction which is contrary to state laws, and there is no implication or intimation in the Emergency

Price Control Act or the regulations, that the states are not free to adopt their own regulations prohibiting the sales of any commodities which they would otherwise be constitutionally empowered to prohibit.

■ With respect to the argument that under Section 302(i) of the Act, "maximum price" is defined as "maximum lawful price" and that therefore Congress must have intended that the Price Administrator should only establish maximum prices for lawful sales of commodities—thereby precluding him from establishing maximum prices for unlawful sales, such as the sale of intoxicating liquor in states where such sales are prohibited, we find such contention to be without merit.

The provisions of the Act are directed to a plan of establishing price control over commodities in a time of national emergency, with penalties provided for making sales above the maximum prices established by the Administrator. "Maximum lawful prices" must be deemed to refer to those prices which are lawful under the Act, or, as expressed in other words, to prices for sales which may be made without incurring the penalties imposed for violation of the Act. To adopt the alternative construction of the phrase, which is urged by complainants, we would be required to interpret "maximum lawful prices" as meaning the maximum prices which are lawful under the laws of Mississippi. For, as previously mentioned, complainants say that there can be no maximum lawful price for the sale of intoxicating liquor, where such sale is unlawful—unless it is attempted on the part of the federal government to make the sale of intoxicating liquor in Mississippi lawful under price control, in opposition to the state law.

Were such a construction to be followed, it would result that non-compliance with the state statutes or ordinances regulating the sales of commodities—such as sales on Sunday, sales without the required licenses, sales of certain drugs without a doctor's prescription, and the like—would confer immunity from price control upon persons making sales in violation of the provisions of the Emergency Price Control Act. Although the statute would not have been susceptible of such an argument if the term "maximum price" instead of "maximum lawful price" had been applied throughout its various provisions, nevertheless, that fact is not persuasive that a construction should be given to the expres-

sion that would subject all prices established by the Administrator to a criterion so extreme and incongruous—that no price could be established by the Price Administrator for the sale of any commodity unless such a sale was a lawful one under local ordinance or statutes. The same may be remarked of complainants' contention that any other construction of the statute would result in authorizing sales of intoxicating liquors in states where such sales are prohibited, by virtue of the establishing of a maximum lawful price for a commodity which it is unlawful to sell. The least that can be said of such claims is that an eventuality so extraordinary and, to such an extent, in derogation of the entire program and policy of establishing maximum prices of commodities to effect price control in a national emergency, could not be assumed to have been intended by Congress, in view of the complete absence of any indication or reference thereto in the history of the statute or in the hearings or debates on the legislation. To hold otherwise would be to find that Congress had carefully concealed its real intention by artful obscurity of phrase, in defining "maximum lawful price"—and such a conclusion would obviously be untenable. We find no difficulty in arriving, through the construction of the term "maximum lawful price," which we have adopted, at a more reasonable and natural interpretation of the phrase in question.

■ It is said further that Congress intended to exclude control over the price of intoxicating liquor from the scope of the Emergency Price Control Act, where such liquor is contraband under state law. This argument is based upon the claim that the only control the federal government has over intoxicating liquors is the power to prevent importation into a state, contrary to the laws thereof, and the power of levying taxes when the liquor is already within a state; and it is asserted that if it had been the intention of Congress that the Administrator should have power to regulate the price of liquor, it would have dealt separately and specifically with this subject in the Price Control Act.

In answer to the foregoing contention, it is to be observed that, under Section 2(a) of the Act, it is provided that maximum prices may be established for a commodity or commodities. In Section 302(c), 50 U.S.C.A.Appendix § 942(c), it is set forth that the term "commodity" means commodities, articles, products and materials; and in Lincoln Savings Bank of Brooklyn v. Brown, Em.App., 137 F.2d 228, it was stated by this Court that the above mentioned definition of commodity was "an extremely broad definition, encompassing, we believe, all things possessing the attribute of tangible existence, i. e., of space-displacing objects, which are the subject of barter, transfer, sale, or other transactions involving the exchange of money or other value." 137 F.2d at page 230.

With regard to the contention that Congress would have specified that the Administrator had power to establish prices over intoxicating liquor in states where such sales were unlawful, if that had been its intention, "the Price Act discloses no restriction upon the definition of 'commodity' which conforms to complainant's construction. We have previously expressed our views in respect of the latitude with which the term 'commodity' was employed. We feel that if Congress had intended the limitation which the complainant proposes it would have stated so expressly, or it would have enlarged the list of commodities specifically excluded." Lincoln Savings Bank of Brooklyn v. Brown, supra, 137 F.2d at page 231. Congress dealt specifically with exemptions, and did not declare the limitation upon which the complainants rely.

■ We come then to the final objection to the regulation, that no maximum price for intoxicating liquors may be legally established for the state of Mississippi, for the reason that there was no legal market price during the period October 1-15, 1941, to which the Price Administrator could refer in performing the duty imposed by Section 2(a) of the Act, which provides that: "So far as practicable * * * the Administrator shall ascertain and give due consideration to the prices prevailing between October 1 and October 15, 1941 * * *." Since the Administrator is to ascertain and give due consideration to prevailing prices, only *so far as practicable,* inability to ascertain prevailing prices in the State of Mississippi for illegal sales would not thereby have rendered the price regulation invalid.

■ The objective of the Emergency Price Control Act is to achieve a comprehensive regulation of the price of commodities in order to assure, in the national emergency, an adequate supply of goods

for the public at fair prices. Partial price control is not enough, for the purpose is to stabilize prices. In these cases, price control is not only consistent with the purposes of the Act with respect to sales of intoxicating liquor in the state of Mississippi, but is also necessary to remove the incentive to divert supplies to an area where uncontrolled prices would otherwise be obtained, with subsequent pressure upon price control in neighboring states. For it is obvious that it would be the tendency of sellers to ship their commodities to an area where uncontrolled prices may be secured; and this result would be inconsistent, alike with the state prohibition laws and control of prices over commodities, both in Mississippi and in the surrounding states. Without such price control scarce raw materials and productive effort needed to produce necessities for the armed forces and the public would likely be diverted into the manufacture and production of goods, unnecessary, or not so necessary, to the nation during the period of national emergency.

Price control of such commodities in Mississippi serves to effectuate the purposes of the Act. There is the same danger of inflation from uncontrolled prices of commodities in Mississippi as there is in other states; and, in carrying out the general regulation of prices in the nation, there is as much need to control the price of liquor in Mississippi as there is to control it in any other state. Effective price control demands regulation of illegal, as well as legal, sales of commodities.

In the circumstances of these cases, the federal government cannot be said merely to be regulating the price of liquor, but rather it is engaged in regulating the prices of all commodities necessary to the public interest in time of war and emergency, and intoxicating liquors only incidentally, here, come within the scope of price control.

The regulations are presumed to be valid, and the burden of establishing the contrary rests upon complainants. Montgomery Ward & Co. v. Bowles, Em.App., 138 F.2d 669; Gillespie-Rogers-Pyatt Co. v. Bowles, Em.App., 144 F.2d 361. Complainants have failed to establish that the regulation in question is inconsistent with the laws of Mississippi, with the purposes of the Emergency Price Control Act, or invalid in any other particulars.

The complaints are, accordingly, dismissed.

MARIS, Chief Judge (dissenting).

With much that is said in the opinion of the court I am in agreement but I find myself unable to agree with the court's conclusion that the Emergency Price Control Act authorizes the Price Administrator to regulate the prices to be charged for commodities the sale of which at any price is unlawful under the terms of a valid state law. On the contrary I think that the Administrator has exceeded his statutory mandate in applying his regulation to the sale of intoxicating liquor in the State of Mississippi where such sale is unlawful.

The Administrator derives his authority to establish maximum prices for commodities from Section 2(a) of the Act, 50 U.S. C.A.Appendix § 902(a). That section provides that "Whenever in the judgment of the Price Administrator * * * the price or prices of a commodity or commodities have risen or threaten to rise to an extent or in a manner inconsistent with the purposes of this Act, he may by regulation or order establish such maximum price or maximum prices as in his judgment will be generally fair and equitable and will effectuate the purposes of this Act."

Section 302(i) states that as used in the act the "term 'maximum price,' as applied to price of commodities means the maximum lawful price for such commodities." I think that this statutory definition of maximum price must be construed as an indication of the Congressional intent not to interfere with or cut across the operation of state price control and prohibitory laws. When read into Section 2(a) as it must be, the definition serves to limit the power given to the Administrator by that subsection. He may not establish maximum prices which under the law of the state in which the commodity in question is being sold may not lawfully be charged or paid.

The opinion of the court suggests that "maximum lawful price" as used in the definition means those prices which are lawful under the Emergency Price Control Act. My difficulty with this construction is that Section 2(a) itself specifies what maximum prices shall be lawful under the act. They must be generally fair and equitable and such as will effectuate the purposes of the act. Accordingly on this view of the statutory definition it becomes wholly tautological and meaningless. Section 2(a) must then be read as if it said that the Administrator may establish such maximum prices which are lawful under

this act as are lawful under this act. Such an interpretation seems to me to violate the cardinal rule of statutory construction that effect must be given, if possible, to every part of a statute. The meaning which I would place upon the definition of "maximum price" in Section 302(i), and that meaning only, will give an independent effect to it in the statute which would have been absent if the definition had been omitted.

I am the more persuaded of the correctness of the meaning which I have suggested for the statutory definition because I think that it eliminates serious questions which arise when the act is construed to authorize the fixing of maximum prices for the sale of commodities which may not lawfully be charged or paid under state laws. I cannot accept the Administrator's suggestion that in such a case the Emergency Price Control Act operates merely to impose additional criminal sanctions in aid of the enforcement of the state law. On the contrary the act itself states that its purpose is to stabilize prices. It is a regulatory and not a prohibitory law. If this were not otherwise clear it would be made plain by Section 205(f), 50 U.S.C.A.Appendix, § 925(f), which authorizes the Administrator to issue licenses to persons subject to price regulations under the act.

I am unwilling to impute to Congress the intention under the war power to authorize the regulation of the sale in a state of a commodity which the state, acting under its sovereign police power, has placed under its ban. Such an unseemly conflict between federal and state authority ought to be avoided if at all possible. I think it is possible here. I do not believe that it would be seriously contended that the national defense and security will be advanced by regulating in Mississippi the sale of intoxicating liquor which that state has prohibited.

The Administrator suggests that it is necessary to place maximum prices upon the unlawful sale of liquor in Mississippi because otherwise excessive amounts of that commodity will be diverted into that state from adjoining states with a resulting scarcity in the latter states. Passing the question whether the national defense and security could possibly be promoted by increasing the consumption of intoxicating liquor, it is sufficient to point out that the shipment of intoxicating liquor into Mississippi from other states is made a federal crime by the Liquor Enforcement Act of 1936, 27 U.S.C.A. § 221 et seq.

There is thus ample federal law already existing to aid the State of Mississippi in dealing with this problem. It is, therefore, not necessary for the Price Administrator to divert his attention and that of his enforcement staff from the tremendous and urgent problems involved in the control of the prices of legitimate commodities in order to deal with what is essentially a local police problem wholly out of his field. In my opinion he would be well advised to leave that problem with the federal and state law enforcement agencies whose duty it is to deal with it.