760

**COLLINS et al. v. BOWLES,**
Price Administrator.

No. 231.

United States Emergency Court of Appeals.
Heard at Louisville, Ky., Dec. 19, 1945.
Decided Jan. 10, 1946.

Allen P. Dodd, Sr., of Louisville, Ky. (John K. Skaggs, of Louisville, Ky., and Max O'Rell Truitt, of Washington, D. C., on the brief) for complainants.

John O. Honnold, Jr., Chief, Court Review Price Branch, of Washington, D. C., and Fritz Krueger, Dist. Enforcement Atty., of Louisville, Ky. (Richard H. Field, Gen. Counsel, Jacob D. Hyman, Associate Gen. Counsel, and Betty L. Brown, Atty., OPA, all of Washington, D. C., on the brief), for respondent.

Before MARIS, Chief Judge, and McALLISTER and LINDLEY, Judges.

LINDLEY, Judge.

Respondent brought suit against complainants to recover damages for sales of whiskey above established ceiling prices. Pursuant to the provisions of Section 204(e) (1) of the Price Control Act, 50 U.S.C.A.Appendix § 924(e) (1), complainants procured leave in the District Court to apply to this court for adjudication of the validity of the regulations involved.

Complainants were stockholders in an incorporated distillery dissolved December 31, 1942. As a result of such dissolution, they received certain warehouse receipts for bulk whiskey stored in bonded warehouses, which they thereafter sold. They contend, (1) that General Maximum Price Regulation, Maximum Price Regulation No. 193 and various amendatory regulations do not apply to such sales; (2) that the Price Control Act does not confer upon respondent any authority to establish maximum prices applicable to sales of warehouse receipts for bulk whiskey; (3) that the regulations conflict with certain Kentucky statutes and are, therefore, invalid under the Twenty-First Amendment to the United States Constitution; and (4) that the provisions of the regulations are so vague, uncertain and indefinite as to be invalid.

General Maximum Price Regulation (7 F.R. 3153) established as maximum prices the highest prices charged by each seller during March, 1942. On August 5, 1942, Regulation No. 193 superseded the General Maximum Price Regulation in so far as sale of domestic distilled spirits is concerned (7 F.R. 6006). The term "domestic distilled spirits" was defined as any and all distilled spirits produced within the continental United States within Classes 2 to 7 of Article II issued by the Federal Alcohol Administration. Whiskey was included. This regulation followed the pricing method inaugurated by the General Maximum Price Regulation, allowing, however, certain adjustments for increases in costs and taxes. On February 3, 1943, Amendment No. 4 (8 F.R. 1632) to No. 193, prescribed dollars-and-cents ceiling prices for sales of domestic bulk whiskey. It provided that such maximum prices should govern irrespective of whether the sale was effected by transfer of warehouse receipts or otherwise. This in turn was superseded by Amendment No. 3 to MPR No. 445 (8 F.R. 13500), October 17, 1943, in respect to domestic bulk whiskey.

Both the General Maximum Price Regulation and MPR No. 193 prescribed the procedure for establishment of the maximum prices. If the seller had made no sales during March, 1942, he might determine his maximum price by reference to that of his most nearly competitive seller of the same or similar commodity sold to a purchaser of the same class. If it was impossible to fix the price by this method, then, in accord with Section 3 of the General Maximum Price Regulation, he was required to file with respondent an application for approval of a proposed maximum price.

Complainants insist that sales of warehouse receipts are not covered by the regulations. With that issue we are not concerned in this case. We held, in Alan Levin Foundation v. Bowles, 152 F.2d

467, in a protest proceedings under Section 204(a), that before we could reach the question of validity, we must determine whether the regulation was applicable to complainant; for, if it was not so applicable, obviously complainant would have no right to complain. But this is a complaint filed under Section 204(e) (1), by leave of the District Court, in whom lies the power to determine whether the regulation covers sales of warehouse receipts and, therefore, applies to complainants' transactions. Recognizing its burden in this respect, the District Court, in Brown v. Cummins Distilleries Corporation, D.C., 53 F. Supp. 659, determined this issue, concluding that the regulations, by their express provisions and necessary implications, covered sales of warehouse receipts for bulk whiskey. That interpretation we must accept here; otherwise complainants would be unable to test validity of the regulations which respondent is attempting to enforce against them. Complainants' remedy in respect to interpretation rests in the District Court and in reviews in accord with appropriate statutes.

■ However, there is a phase of this controversy lying within our jurisdiction, viz., whether respondent is authorized by the statute to regulate prices of warehouse receipts. Under Section 204(d) of the Price Control Act, we have "exclusive jurisdiction to determine the validity of any regulation or order * * * and of any provision of any such regulation * * *"; and the District Court is denied "jurisdiction to consider * * * validity * * *". Under Section 204(b) we may not declare a regulation invalid unless "the complainant establishes to the satisfaction of the court that the regulation * * * is not in accordance with law, or is arbitrary or capricious." As we have said, our jurisdiction, so defined, does not include power to determine mere questions of interpretation or applicability. But whether an edict of the Administrator is "in accordance with the law," obviously depends upon whether it infringes upon either the constitution or the statutes of the United States. In other words, though whether warehouse receipts are within the regulation is a question of interpretation, the inquiry as to whether warehouse receipts are commodities within the Act or are securities, which are excluded from the regulation, raises an issue of whether the regulation is in accord with the law,—whether the Administrator has received from the Congress power to regulate prices of warehouse receipts for whiskey in barrels. This indicates, we think, a line of demarcation between the jurisdiction of the District Court and that of ourselves, a distinction between interpretation, strictly speaking, and validity.

■ Whether warehouse receipts for barrelled whiskey are commodities in the sense in which that term is employed in the Act is our precise question. Congress was not attempting to frame a negotiable instrument act; it was engaged in framing legislation to freeze prices in order to prevent inflation and other ills resulting from unrestrained soaring prices of commodities in a time of national emergency. Exempted are intangibles such as notes, bonds and stocks. Warehouse receipts are indicia of title to personal property, just as deeds of conveyance are instruments of title to real property. They may possess some of the attributes of negotiable paper, in so far as transfer and assignment of title are concerned, but they represent no promise to pay as do notes and bonds and no undivided interest in corporate property as do stocks. They are evidence of ownership of a specific, identifiable commodity, barrelled whiskey. The warehouseman receives this whiskey as bailee and is bound by the obligations of a bailee to deliver it to the receipt holder or his assignee. He pays no interest, shares no profits, declares no dividends to the bailor, but holds the latter's commodity for safekeeping, in compliance with federal and state law. To exempt whiskey covered by such receipts from price control would be to permit bulk whiskey to be sold at any and all prices and inevitably, to that extent, destroy or seriously impair the purpose of the Act. We think there can be no question that Congress did intend to permit control of prices of all commodities, whether sold without indicia of title over the counter, or by transfer of warehouse receipts or other indicia of ownership.

Complainants urge, however, that, inasmuch as the owners of such warehouse receipts are restricted in their right to enjoy possession of their property by various state and federal statutes, the receipts are taken out of the general category of commodities and may be freely dealt in. This, we think wholly beside the point, for, though sale of intoxicating liquor is, by virtue of the police power and the federal revenue power, hedged about by certain

restrictions, that fact does not affect the legal character of the owner's title. Transfer and enjoyment of all property are subject to all constitutional powers of the state and the national government. Transfer of these receipts effected transfer of the commodity, whiskey, and it is immaterial that sales of whiskey as such are subject to certain statutory restrictions.

Complainants insist that, under the Twenty-First Amendment, the state of Kentucky has exclusive right to regulate liquor and sales thereof and that federal agencies are precluded from fixing maximum prices therefor. We announced in Taub et al. v. Bowles, Em.App., 149 F.2d 817 (ECA) that the amendment works no deprivation of constitutional power of the federal government, including the power to enact emergency price control legislation under the war power. We adhered to that decision in Barnett v. Bowles, Em.App., 151 F.2d 77 and are of the same opinion still.

It should be observed, however, that the record reflects no conflict between the state of Kentucky and the federal legislation. Thus, in 1942, the state statute was amended to provide that any license to sell alcohol beverages would be revoked or suspended in the case of sales at prices in excess of those set by federal regulation. KRS Section 243.500(6). Another Section, 244.230, expressly adopted the regulation of the Bureau of Internal Revenue relating to labelling, and Sections 243.490 and 243.-500(5) provide for revocation of license for violation of other national regulations. All this is clearly indicative of the state legislature's intent that its enactments should not conflict with the acts of Congress.

Furthermore, there is no conflict between the state Fair Trade Act, KRS 244.380 et seq., and the Price Control Act, at least in so far as complainants' sales are concerned. Bulk whiskey is not regulated by the Fair Trade Act. The Kentucky authorities have not fixed prices applicable to sales of that commodity. Then, too, the Kentucky statute is a minimum price law and does not relate to maximum prices.

In this connection, complainants aver that the provision of Section 2 of the regulation that prices lower than those set forth in (a) may be charged, creates conflict with the state legislation. But the Administrator did not attempt to authorize sales in violation of state law; he merely prescribed maximum prices and exempted the vendors from federal penalties under the Price Control Act if they sold at prices below the ceiling. He made no attempt to license sales contrary to state law. Barnett v. Bowles, Em.App., 151 F.2d 77, certiorari denied November 13, 1945.

There remains to be considered the contention that Maximum Price Regulation No. 193 is so vague and indefinite that complainants could not with any degree of certainty have determined a maximum price. True, complainants made no sales in March, 1942. In that situation it was their duty, under the law, if possible, to determine their price from consideration of the prices of their most closely competitive seller as provided by the regulation. They make no showing as to whether they attempted to ascertain their maximum price by this method, but, if they could not, then they had a remedy, namely, to apply to the Administrator for approval of a suggested ceiling price. No uncertainty existed. Every contingency had been covered, and ample, efficient and practical means had been provided for determining the maximum price.

In this connection complainants maintain that the regulation is invalid under the reasoning of United States v. Cohen Grocery Company, 255 U.S. 81, 41 S.Ct. 298, 14 A.L.R. 1045, 65 L.Ed. 516, which held the Lever Act unconstitutional because of uncertainty. The Act there considered subjected sellers to penalties if they made any "unjust or unreasonable" rate or charge, and the court held it invalid because no proper certain standard had been prescribed. In other words, the regulation provided no fixed standard by which a person might determine the legality of his conduct. The distinction is obvious.

Judgment will enter dismissing the complaint.