**COLLINS et al. v. FLEMING, Temporary Controls Administrator.**

No. 371.

United States Emergency Court of Appeals.
Submitted Oct. 31, 1946.

Decided Jan. 2, 1947.

John K. Skaggs, Jr., and Allen P. Dodd, Sr., both of Louisville, Ky., and Max O'Rell Truitt, of Washington, D. C., for the complainants.

Richard H. Field, Gen. Counsel, Carl A. Auerbach, Associate Gen. Counsel, William R. Ming, Jr., Chief Court Review Price Branch, and James A. Durham and Prentice A. Hilburn, Attys., all of the Office of Price Administration, all of Washington, D. C., for respondent.

Before MARIS, Chief Judge, and MAGRUDER and McALLISTER, Judges.

MARIS, Chief Judge.

The complainants were prior to December 1, 1942 the owners and holders of 28,827 shares of the common stock of Cummins Distilleries Corporation, a Delaware corporation engaged in the production and storage of bourbon whiskey in Kentucky, where its chief office, distilleries and bonded warehouses were located. On December 24, 1942 the corporation had outstanding 219,-207 shares of common stock which were held by 395 stockholders scattered throughout the middle west. On December 24, 1942 the corporation was dissolved by a vote of the requisite number of shares. As part of the plan of liquidation warehouse receipts for approximately 51,000 barrels of bourbon whiskey were distributed to the common stockholders by delivery to an authorized stockholders' committee. The certificate of corporate dissolution issued December 31, 1942. Beginning January 4, 1943 and ending January 9, 1943 the stockholders' committee sold the warehouse receipts and collected the proceeds of sale.

On May 27, 1943 the Price Administrator filed a complaint in the United States District Court for the Western District of Kentucky against the corporation and a large number but not all of its individual stockholders, among them being the complainants in this action. It was charged that either the corporation or the individual defendants or both had sold approximately 51,000 "barrels of Bourbon whiskey" at a price above the ceiling fixed by Maximum Price Regulation No. 193, and a judgment was sought for treble damages in the sum of $6,799,101.50 against each of the defendants.

The present case is before us upon a complaint filed pursuant to Section 204(a) of the Emergency Price Control Act[1] following the denial by the Price Administrator of the complainants' amended joint protest. These same complainants had previously filed a complaint in this court pursuant to Section 204(a) of the Act following the dismissal by the Price Administrator of their joint protest. This will be referred to as the complainants' first 204(a) case. Being of opinion that we were without jurisdiction to entertain that complaint we entered judgment dismissing it. The Supreme Court reversed. Collins v. Porter, 1946, 66 S.Ct. 893. We thereupon vacated our judgment, set aside the order of the Price Administrator dismissing the joint protest and remanded the cause to the Price Administrator with directions to consider the protest upon the merits. The complainants, with leave of the Price Administrator, amended their protest. The amended protest was denied by the Price Administrator after consideration upon the merits. The present complaint was then filed under Section 204(a) of the Act.

In the present case as in the first 204(a) case the complainants contend that Maximum Price Regulation No. 193[2] and the General Maximum Price Regulation[3] to the extent that its provisions were incorporated by reference into Maximum Price Regulation No. 193 were inapplicable to the sales which they made and if applicable were invalid. After our dismissal of the complaint in the first 204(a) case and before that action was reversed by the Supreme Court this court, upon a complaint filed by these complainants under Section

[1] 50 U.S.C.A.Appendix, § 924(a).
[2] 7 F.R. 6006, issued August 1, 1942 and effective August 5, 1942.
[3] 7 F.R. 3153, issued April 28, 1942 and effective May 11, 1942.

204(e) of the Act with leave of the court before which the treble-damages suit was pending, sustained the validity of MPR 193 as applied to the complainants' sales. Collins v. Bowles, Em.App. 1946, 152 F.2d 760, 762. This will be referred to as the complainants' 204(e) case. In the 204(e) case we did not pass upon the applicability of the regulations to the complainants but assumed, in accordance with the view of the district court, that they were applicable. In reversing our judgment in the first 204(a) case the Supreme Court held that the complainants were entitled to our independent determination of the question of the applicability of MPR 193 to their sales, since that determination would be binding on the district court in case it was made before final judgment was rendered in that court.[4] Accordingly we turn first to the consideration of that question.

The complainants assert that warehouse receipts are securities within the definition of Section 1499.20(q) of the GMPR[5] and contend that since securities are expressly excluded by Section 1499.9(a) (15) from the coverage of that regulation[6] their sales of warehouse receipts were not within the coverage of the GMPR. But since neither this definition nor exemption of securities was incorporated by reference or otherwise into MPR 193 and since the GMPR, except as so incorporated, did not apply to the complainants' sales we need not consider this contention. It is only necessary for us to determine whether in MPR 193 the Price Administrator did in fact establish maximum prices for the sale of whiskey in barrels evidenced by warehouse receipts. For in the complainants' 204(e) case we have already held that warehouse receipts representing whiskey in barrels are com-

modities, within the meaning of the Act, the maximum prices of which the Price Administrator was empowered to establish.[7]

We think that the question must be answered in the affirmative. In the case of whiskey evidenced by a warehouse receipt the whiskey rather than the receipt for it is undoubtedly the commodity for which the seller fixes a price and for which the purchaser pays that price. It is the whiskey, therefore, rather than the receipt for it which is the commodity with which the Emergency Price Control Act intends the Price Administrator to deal. Since MPR 193 expressly deals with domestic distilled spirits, including whiskey, we conclude that the Price Administrator has fixed maximum prices for whiskey represented by warehouse receipts. The complainants, however, contend that MPR 193 is nonetheless inapplicable to their sales for a number of reasons which we shall proceed to examine.

The complainants argue that whatever may be said for such a conclusion under other circumstances it is indefensible when the commodity in question is whiskey in barrels stored in a warehouse and the situs of the sales is the State of Kentucky. For in Kentucky, they say, "No one, even including licensees, is authorized to receive bourbon whiskey in bulk from any bonded warehouse in barrels, and no one is authorized to receive whiskey in Kentucky that is stored in bonded warehouses except in glass containers, the maximum size of which is one quart." This is merely an assertion that there are state laws which restrict the free transfer of the possession of whiskey in bulk in Kentucky. The regulation, however, is directed towards the es-

---

[4] No final judgment has been rendered in the treble-damages action in the district court. The opinion of Judge Miller which construed the regulation as applicable, Brown v. Cummins Distilleries Corporation, D.C.1944, 53 F.Supp. 659, was rendered on the denial of motions for summary judgment and for dismissal of the complaint in that action. Since the orders of the district court denying these motions were interlocutory they were not such as to estop the parties under principles of res judicata from relitigating in this court the question of

construction. Restatement, Judgments, § 41. As the Supreme Court indicated, the situation would have been different if a final judgment involving the construction of the regulation had been entered in the district court.

[5] "'Securities' includes any note, stock, bond, and interest or instrument commonly known as a 'security'."

[6] "This General Maximum Price Regulation shall not apply to sales or deliveries of * * * securities * * *."

[7] Collins v. Bowles, Em.App.1946, 152 F.2d 760, 762.

tablishment of maximum prices at which persons may "sell or deliver" whiskey.

In their 204(e) case the complainants urged as they do here that inasmuch as the owners of the warehouse receipts are restricted in their right to enjoy possession of their property by various state and federal statutes, the warehouse receipts are taken out of the general category of commodities. We there said,

" * * * though sale of intoxicating liquor is, by virtue of the police power and the federal revenue power, hedged about by certain restrictions, that fact does not affect the legal character of the owner's title. Transfer and enjoyment of all property are subject to all constitutional powers of the state and the national government. Transfer of these receipts effected transfer of the commodity, whiskey, and it is immaterial that sales of whiskey as such are subject to certain statutory restrictions." [8]

■ We adhere to these views. It is well settled that a sale of specific goods may be effected by the transfer of property in the goods and that the transfer of property may take place without the actual transfer of possession of the goods, if the parties so intend. It is so provided by the Uniform Sales Act which is in force in Kentucky.[9] Moreover, where the commodity is in a warehouse the Uniform Warehouse Receipts Act [10] which is also in force in Kentucky provides that,

"A person to whom a receipt has been transferred but not negotiated, acquires thereby, as against the transferor, the title of the goods, subject to the terms of any agreement with the transferor."

We conclude that the complainants "sold" the whiskey even though, as asserted by them, the purchasers were restricted as to the manner and means of obtaining possession of it. Moreover it appears from the evidence that the complainants' assertion that in Kentucky no one under any circumstances may withdraw whiskey in bulk from bonded warehouses is not well founded. On the contrary it appears that whiskey may be withdrawn in bulk by distillers, rectifiers and other persons specially licensed to receive it.[11] There is nothing in the evidence before us which would call for the conclusion that those who purchased from the complainants were not within the class of purchasers licensed to withdraw the whiskey in bulk from the bonded warehouses in which it was held.

■ The complainants contend that MPR 193 as it stood in January, 1943 applied only to those sales in which the domestic distilled spirits were sold as packaged goods and was inapplicable to sales of whiskey in bulk. The language of MPR 193 gives no support to this contention. The sole limitation upon the coverage of the regulation is to be found in Section 1420.10 and is not as to the form of the sale, whether packaged or in bulk, but as to the commodities which are to be treated as within the phrase "domestic distilled spirits". Section 1420.10(a) (1) of the regulation defines that term to mean, "any and all distilled spirits produced within the continental United States, which are included within classes 2 to 7 inclusive of Article 11 of Regulations 5 issued by the Federal Alcohol Administration Relating to Labeling and Advertising of Distilled Spirits, As Amended." Whiskey, and specifically bourbon whiskey, is included by the Federal Alcohol Administration within class 2 [12] and consequently is included by definition in the term "domestic distilled spirits" as found in MPR 193.

■ The complainants, relying upon the language in the Statement of Considerations accompanying MPR 193 to the effect that orders of the War Production Board and Federal and State taxes "imposed or threatened to impose unjust hardship upon sellers of domestic distilled spirits" urge that MPR 193 was promulgated solely to relieve the industry from undue hardship

---

[8] Collins v. Bowles, Em.App.1946, 152 F.2d 760, 762.

[9] Adopted in Kentucky on March 24, 1928, Acts 1928, Ch. 148, Ky.Rev.St. § 361.180.

[10] Adopted in Kentucky April 20, 1938, Acts 1938, 1st Ex.Sess. Ch. 39, Ky.Rev. St. § 358.420. Compare H. A. Thierman Co. v. Laupheimer, 1900, 21 Ky.LawRep. 1631, 55 S.W. 925.

[11] See Ky.Rev.St. § 243.130.

[12] 27 Code of Federal Regulations, § 5.21(b) (1), page 36.

and, therefore, cannot apply to them. For, they say, they are not within the class of sellers intended to be reached by the regulation since they are not part of the industry but merely made sales which were incidental and not in the ordinary course of business. There is no support in MPR 193 for the limitation which the complainants would thus have us read into the scope of the regulation. Section 1420.1 of the regulation is all inclusive in its scope and unambiguous in its purport. It provides that "* * * no person shall sell or deliver domestic distilled spirits and no person in the course of trade or business shall buy or receive domestic distilled spirits at prices higher than the maximum prices set forth in Appendix A * * *" to the regulation. Neither the number nor size of the sales nor the type of seller has any bearing on whether maximum prices are established for the specific sales. We conclude that MPR 193 is applicable to the sales made by the complainants in January, 1943.

The complainants contest the applicability of Section 1420.13(c) of MPR 193 in so far as it provides that "the seller's maximum price for such domestic distilled spirits shall be determined in accordance with § 1499.3 of the General Maximum Price Regulation." In particular they contest the applicability, under Section 1420.13(c) of MPR 193, of subsection (c) of Section 1499.3 of the GMPR, which provides:

"(c) In the case of a sale at wholesale or retail of a commodity which cannot be priced under paragraph (a) of this section, the maximum price shall be a price determined by the seller after specific authorization from the Office of Price Administration or any duly authorized officer thereof. A seller who seeks an authorization to determine a maximum price under the provisions of this paragraph shall file with the regional office of the Office of Price Administration for the region in which his principal place of business is located an application setting forth (1) a description of the commodity or commodities for which a maximum price is sought; (2) a statement of the reasons why such commodity or commodities cannot be priced under § 1499.2 or § 1499.3 (a) of this General Maximum Price Regulation; and (3) any other facts which the seller wishes to submit in support of the application. The seller shall also submit such additional pertinent information as the regional office may require. Such authorization will be given in the form of an order prescribing a method of determining the maximum price."

The complainants assert that they made no sales at wholesale or retail, as those terms are used in this subsection, and consequently that it cannot apply to them. Since the Price Administrator tacitly concedes that the complainants made no sales at retail this phase of the contention requires no discussion. He does, however, controvert the assertion that the complainants made no sales at wholesale.

Section 1499.20(p) of the GMPR, as amended by Amendment 21,[13] issued August 1, 1942 and in effect in January, 1943, which was incorporated into MPR 193 by Section 1420.8 thereof, defined "sale at wholesale" as follows:

"(p) 'Sale at wholesale' means a sale by a person who buys a commodity and resells it, without substantially changing its form, to any person other than the ultimate consumer, except that (1) for the purposes of § 1499.3 of this General Maximum Price Regulation a sale at wholesale shall include any sale by such person to an industrial or commercial user, and (2) for the purposes of § 1499.9(a) (3), 'sold at wholesale' refers to a sale of fluid milk or cream in bottles or paper containers to any person, including an industrial or commercial user, other than the ultimate consumer."

The complainants argue that since they did not buy the bulk whiskey but rather acquired title thereto by reason of their ownership of stock in the dissolved corporation they could not have made "sales at wholesale" as thus defined. This contention might have merit if the word "buy" were used in its every day connotation. The word has a much broader significance, however, when used in the regulation, as may be seen from Section 1499.20(r) of the GMPR, which was incorporated into MPR 193 by Section 1420.8 thereof, and which reads: [14]

---

[13] 7 F.R. 6007.

[14] 7 F.R. 3153, 3156.

" 'Sell' includes sell, supply, dispose, barter, exchange, lease, transfer, and deliver, and contracts and offers to do any of the foregoing. The terms 'sale,' 'selling', 'sold', 'seller', 'buy', 'purchase' and 'purchaser', shall be construed accordingly."

 Within the meaning of this definition the corporation undoubtedly did "sell" the whiskey to its stockholders when it transferred title thereto to them and the stockholders did "buy" the whiskey. It is alleged by the Price Administrator that they resold it to an industrial and commercial user without changing its form. That being so the complainants made sales at wholesale within the meaning of Section 1499.3(c) of the GMPR.

We conclude that MPR 193 is applicable to complainants' sales and turn to the issue of validity of MPR 193 now sought to be raised.

The complainants attack the validity of MPR 193 upon the ground that it is contrary to the statutes of Kentucky, contrary to the Twenty-first Amendment to the Constitution of the United States and so vague and indefinite that owners of warehouse receipts could not have ascertained in January, 1943 the maximum prices at which they could legally sell the whiskey evidenced by the warehouse receipts. These very objections were advanced and argued by these complainants in this court in their 204(e) case and were found to be without merit.[15] Our judgment in that case is res judicata upon the issue of validity there determined. Safeway Stores v. Porter, Em.App.1946, 154 F.2d 656, certiorari denied 66 S.Ct. 1367.

Accordingly we need enter into no further discussion of these objections except to say that we adhere to the conclusions reached in the 204(e) case and to point out that in our opinion filed today in the case of Collins et al. v. Fleming, Temporary Controls Administrator, 159 F.2d 431, in discussing the validity of the order under attack in those cases we have fully considered the pricing provisions of MPR 193 as implemented by the GMPR and have shown that those provisions are sufficiently

certain and definite to comply with the statutory standards.

In their brief in support of the present complaint for the first time the complainants assert as an additional ground of invalidity that "Enforcement of the regulations, as here sought to be enforced, is violative of the Due Process Clause of the Fifth Amendment to the Federal Constitution." Since this objection was not set forth in the complainants' protest we are precluded by the express terms of Section 204(a) of the Act from considering it. We conclude that MPR 193, as implemented by the GMPR, is valid.

A judgment will be entered dismissing the complaint.

---

[15] Collins v. Bowles, Em.App.1946, 152 F.2d 760.