## CULHANE v. CLARK.
### No. 410.

United States Emergency Court of Appeals.

Heard at Chicago, Ill., May 12, 1947.

Decided June 18, 1947.

John R. Montgomery, of Chicago, Ill. (Louis E. Hart, of Chicago, Ill., and William P. MacCracken, Jr., of Washington, D. C., on the brief), for complainant.

James A. Durham, of Washington, D. C. (Carl A. Auerbach, and Harry H. Schneider, both of Washington, D. C., and Stanley

M. Riesner, of New York City, on the brief), for respondent.

Before MARIS, Chief Judge, and McALLISTER and LINDLEY, Judges.

McALLISTER, Judge.

This case comes before us on a motion made by the Temporary Controls Administrator to dismiss the complaint of William M. Culhane, doing business as W. M. Culhane & Co., which was heretofore filed in this court. The complaint was based upon the denial by the Administrator of Culhane's protest against the application of a regulation to his sales of warehouse receipts for whiskey.

Complainant is a Chicago broker and dealer at wholesale in warehouse receipts for bulk whiskey, stored in government bonded warehouses. During the years of 1942 and 1943, he sold a number of such warehouse receipts at prices alleged by the Administrator to be in excess of those permitted by Maximum Price Regulation 193 —Domestic Distilled spirits.[1] This Regulation governed prices for the sales of whiskey. On December 17, 1943, the Administrator filed a complaint in the federal district court at Chicago against Culhane, charging him with having made sales of whiskey in 1942 and 1943 in excess of the prices fixed by Maximum Price Regulation 193. Although the sales in question were of warehouse receipts, the Administrator in the district court suit assumes that the sales of such warehouse receipts were the sales of the whiskey represented by them. Accordingly, in his suit against Culhane, the Administrator proceeded on the theory that, within the meaning of the Regulation, warehouse receipts for whiskey are the same as the whiskey itself, and consequently alleged that the sales of such receipts were governed by the Regulation applicable to the sales of whiskey.

It appears that prior to the issuance of the Regulation here in question, sales of domestic distilled spirits, including whiskey, were governed by the General Maximum Price Regulation, issued April 28, 1942.[2] This stipulated that no person should "sell or de-

---

[1] 7 F.R. 6006, issued August 1, 1942, and effective August 5, 1942.

[2] 7 F.R. 3153. The Regulation was effective May 11, 1942.

liver domestic distilled spirits * * * at prices higher than the maximum price set forth in Appendix A."

The·General Maximum Price Regulation also defined securities in Section 1499.20(q), as follows: " 'Securities' includes any note, stock, bond and interest or instrument commonly known as a 'security'." Sales of the items above defined as securities were exempted from the application of the Regulation under Section 1499.9(a) (15). ·

On June 5, 1942 the Administrator issued an interpretation of these sections which stated the following: "Warehouse receipts. —Although warehouse receipts like other documents of title are often used as security for loans they are not 'instruments commonly known as securities' (See sec. 20(q)), and hence are not excepted. The sale of a warehouse receipt is merely a means of transferring title to the warehoused commodity, and the sale of the receipt is therefore to be priced as being the sale of the warehoused commodity."

On August 1, 1942, Maximum Price Regulation 193 was issued, which in Section 1420.1 provided: " * * * no person shall sell or deliver domestic distilled spirits and no person in the course of trade or business shall buy or receive domestic distilled spirits at prices higher than the maximum prices set forth in Appendix A. * * *"

An official interpretation of this provision of Maximum Price Regulation 193, was issued January 23, 1943, three days before the second sale here in question, stating: "Warehouse receipts.—The Regulation is applicable to the sale of warehouse receipts for domestic distilled spirits. The maximum price for such receipts is the maximum price for the domestic distilled spirits covered by the receipt."

On February 3, 1943, Maximum Price Regulation 193 was amended by the addition of Amendment 4,[3] which, in two different sections, provided, as follows:

Section 1420.10(a) (7): " 'Warehouse receipt' shall mean a warehouse receipt for domestic bulk whiskey as set forth in Section 3 of Regulation No. 3 issued by the Federal Alcohol Administration relating to bulk sales and bottling of distilled spirits."

Sec. 1420.13(e): "Maximum Prices for Domestic Bulk Whiskey in Bond. (1) The seller's maximum prices for sales of domestic bulk whiskey in bond by transfer of warehouse receipts or other evidence of title or otherwise shall be the maximum prices set forth in paragraph (g) in accordance with the age of such whiskey to be priced hereunder."

█ Complainant filed a protest on October 14, 1946, against the application of the foregoing regulations and statutory provisions to his sales of warehouse receipts. After hearing oral argument, the Board of Review recommended that the protest be denied on the ground that all of complainant's objections concerning the application of Maximum Price Regulation 193 to the sales of warehouse receipts, as set forth in complainant's protest, had been considered in Collins et al. v. Fleming, Em.App., 1947, 159 F.2d 426, and there overruled. The Temporary Controls Administrator denied complainant's protest on February 24, 1947. The present complaint was then filed before this court on March 26, 1947. Inasmuch as no final judgment has been rendered in the action for treble damages heretofore commenced in the district court by the Administrator, complainant has a right to the determination of the Emergency Court of Appeals upon the issue of the construction of the Regulation and whether it is applicable to its sales of warehouse receipts. See Collins v. Porter, 328 U.S. 46, 66 S.Ct. 893, 90 L.Ed. 1075; Collins v. Fleming, Em.App., 1947, 159 F.2d 426 (footnote on page 428).

In opposing the Administrator's motion to dismiss, complainant maintains that, prior to Amendment 4, hereafter to be mentioned, Maximum Price Regulation 193 did not apply to warehouse receipts for bulk whiskey. The claim is based on the ground that prices for warehouse receipts were not subject to control by the Regulation because General Maximum Price Regulation had excepted from its application any interest or instrument commonly known as a "security"; and it is maintained that warehouse receipts were commonly known as "securities." Complainant also contends that Maximum Price Regulation 193 did not encompass

³ 8 F.R. 1632.

warehouse receipts for whiskey in bond, until the issuance of Amendment 4 on February 3, 1943, which was subsequent to the sales here in question. The other principal contention of complainant is that assuming such Regulations to be applicable to complainant's sales of the warehouse receipts, as sales of whiskey, the Regulation was void because the Administrator, in the statement of considerations accompanying its issuance, did not set forth that the maximum prices thereby established, reflected to growers of grain (the agricultural commodity used in the production of whiskey), the prices specified by Section 3 of the Stabilization Act.[4]

The present motion, on the part of the Administrator, to dismiss Culhane's complaint, is based primarily on the ground that, according to prior decisions of this court, it has been determined that Maximum Price Regulation 193 is applicable to the sale of warehouse receipts for whiskey in bonded warehouses; and, further, that the Regulation did not contravene Section 3 of the Stabilization Act because of the Administrator's failure to include a finding in the statement of considerations, accompanying the issuance of the Regulation, that the maximum prices therein provided were not established below a price which would reflect to producers of the agricultural commodity used in the making of whiskey, a price equal to a certain computed amount, as provided by the Stabilization Act.

On the issue whether Maximum Price Regulation 193 applies to sales of warehouse receipts for whiskey in bond, it has been held that such warehouse receipts were commodities within the scope of the Emergency Price Control Act of 1942, 50 U.S.C.A.Appendix, § 901 et seq., and that where, upon a dissolution of a corporation, they had been distributed to stockholders, their subsequent sale was subject to the maximum price provisions of the Regulation. Collins v. Bowles, Em.App., 1946, 152 F.2d 760. Furthermore, in Collins v. Fleming, supra, [159 F.2d 428] it was held that Maximum Price Regulation 193 was applicable to warehouse receipts for whiskey. The court there said: "In the case of whiskey evidenced by a warehouse receipt the whiskey rather than

the receipt for it is undoubtedly the commodity for which the seller fixes a price and for which the purchaser pays that price. It is the whiskey, therefore, rather than the receipt for it which is the commodity with which the Emergency Price Control Act intends the Price Administrator to deal. Since MPR 193 expressly deals with domestic distilled spirits, including whiskey, we conclude that the Price Administrator has fixed maximum prices for whiskey represented by warehouse receipts."

But complainant says that this court has not, in its decisions, considered the question whether warehouse receipts come within the definition of "securities," and the exclusion thereof from price control, under the provisions of the General Maximum Price Regulation (Sections 1499.20(q) and 1499.9(a) (15). Complainant, therefore, asks the court to reconsider its holding in Collins v. Fleming, supra, where it was said that it was unnecessary to consider those sections of the General Maximum Price Regulation in passing upon the coverage of commodities under Maximum Price Regulation 193, inasmuch as they were not incorporated by reference or otherwise in the latter Regulation, and that the provisions of the General Maximum price Regulation, except as so incorporated, did not apply to the sales there in question under Maximum Price Regulation 193. Complainant submits that warehouse receipts are instruments commonly known as "securities," as that term is defined by Section 1499.20(q) of the General Maximum Price Regulation; and that such securities were excluded from price control by Section 1499.9(a) (15) of the same Regulation. It is argued that, since warehouse receipts came within the definition of "securities," as provided in the above-mentioned section of the General Maximum Price Regulation, and in view of the fact that Maximum Price Regulation 193 had no application to securities, it would have been irrelevant to adopt by reference such definition. Complainant also says that, conversely, failure to incorporate into Maximum Price Regulation 193, the above definition and exemption of such securities from price control, as allegedly provided in the General Maximum Price

---

[4] 56 Stat. 765, 50 U.S.C.A.Appendix, §§ 961–971.

Regulation, is of no significance. It is emphasized that prior to the promulgation of Amendment 4, there was no mention made of warehouse receipts for bulk whiskey in bond, in any maximum price regulation. Complainant, therefore, submits that the publication of the interpretation of Maximum Price Regulation 193 on January 23, 1943, and the promulgation of Amendment 4, on February 3, 1943, to the effect that the sales of whiskey by warehouse receipts at maximum prices were sales of the commodity covered by the Regulation, constituted an admission on the part of the Administrator that the Regulation as it stood prior to their issuance, and during the period of complainant's sales, did not include warehouse receipts within its ambit.

However, in Collins v. Fleming, supra, where the effect of the interpretation was not argued, and where the sales of the warehouse receipts occurred before the effective date of Amendment 4, it was, in effect, held that the interpretation and the amendment were superfluous, for the court said that it was the whiskey, rather than the receipt for it, which was the commodity with which the Emergency Price Control Act intended the Price Administrator to deal, and that, since Maximum Price Regulation 193 expressly dealt with domestic distilled spirits, including whiskey, the maximum prices for whiskey represented by warehouse receipts were properly fixed thereunder.

It is said by complainant that "the restrictions contained in warehouse receipts serve to emphasize the qualities which cause them to partake so strikingly of the character of securities, and to be used and treated as securities." A similar contention was disposed of in the decision in Collins v. Bowles, supra, [152 F.2d 762] where the court said: "Complainants urge, however, that, inasmuch as the owners of such warehouse receipts are restricted in their right to enjoy possession of their property by various state and federal statutes, the receipts are taken out of the general category of commodities and may be freely dealt in. This, we think wholly beside the point, for, though sale of intoxicating liquor is, by virtue of the police power and the federal revenue power, hedged about by certain restrictions, that fact does not affect the legal character of the owner's title. Transfer and enjoyment of all property are subject to all constitutional powers of the state and the national government. Transfer of these receipts effected transfer of the commodity, whiskey, and it is immaterial that sales of whiskey as such are subject to certain statutory restrictions."

In Collins v. Fleming, supra [159 F.2d 429], the court said: "It is well settled that a sale of specific goods may be effected by the transfer of property in the goods and that the transfer of property may take place without the actual transfer of possession of the goods, if the parties so intend. * * * We conclude that the complainants 'sold' the whiskey even though, as asserted by them, the purchasers were restricted as to the manner and means of obtaining possession of it. * * *"

We see no adequate reason for overruling the decision of the court in Collins v. Fleming, supra, holding that it was unnecessary to consider the sections in question, of the General Maximum Price Regulation, in passing upon the coverage of the commodity under Maximum Price Regulation 193. These sections were not incorporated by reference or otherwise in the latter regulation, and were consequently inapplicable to the matters covered in Maximum Price Regulation 193.

■ It is evident from the interpretations issued under the General Maximum Price Regulation, and Maximum Price Regulation 193, that the Administrator, long before the sales in question, and continuously thereafter, had regarded sales of such warehouse receipts for commodities covered by those Regulations to be nothing more than the sale of the commodities themselves; and in Collins v. Bowles, supra, it was held that warehouse receipts representing whiskey in barrels are commodities within the meaning of the Act, and that the Administrator is empowered to establish the maximum prices of such warehouse receipts. From the foregoing, it is apparent that the interpretations of the Administrator that warehouse receipts are not securities within the meaning of the Regulation, and, accordingly, are not exempted from price control, are concurred in, and sustained by the prior decisions of this court.

■ Complainant's contention that the Administrator's action in issuing Amendment 4 to cover, in explicit terms, sales of warehouse receipts for whiskey, constituted recognition by the Administrator that such receipts were not subject to price control when complainant made the sales, cannot be sustained, in view of the interpretations of the Administrator, and the district court's holding, with which we agree, in Brown v. Cummins Distilleries Corporation, D.C.W.D.Ky., 53 F.Supp. 659. Moreover, the effect of Amendment 4 was only to make special provision for whiskey in bulk, rather than to extend the coverage of the Regulation, or enlarge its scope. Even prior to the Amendment, the Regulation was applicable to the sales here in question. See Brown v. Cummins Distilleries Corporation, supra. It follows that Maximum Price Regulation 193 was applicable to complainant's sales of warehouse receipts.

■ Complainant's other main contention is that the Regulation is void because it failed to set forth in the statement of considerations, accompanying the issuance of Maximum Price Regulation 193, that the prices set for domestic distilled spirits reflect parity prices to growers of grain. Section 2(a) of the Emergency Price Control Act requires that every regulation or order issued thereunder shall be accompanied by a statement of considerations involved in the issuance of such regulation or order. Section 3 of the Stabilization Act [5] provides that no maximum price shall be established or maintained "for any commodity processed or manufactured in whole or substantial part from any agricultural commodity below a price which will reflect to the producers of such agricultural commodity a price therefor equal to the higher of the prices specified in clauses * * * of this section." Complainant does not allege that the prices set for domestic distilled spirits produced from grain did not reflect parity prices to grain producers, but only that such fact was not recited in the statement of considerations. In this regard, it is pertinent to complainant's contention to note what was stated by the Administrator with regard to parity in his statement of considerations. The following paragraph from the statement of considerations accompanying the General Maximum Price Regulation was incorporated by reference into the statement accompanying Maximum Price Regulation 193: "In some instances, although an agricultural commodity is below 110 per cent of parity, it has been possible to include the commodity after it has left the hands of the farmer and has reached the processor since the price at that stage, because of the extent of the intervening margins or because of the nature of the market and competitive conditions will not operate to prevent the agricultural commodity from reaching the price required by Sec. 3(a)."

In the statement of considerations accompanying Maximum Price Regulation 193, it was set forth: "In all other respects, the provisions of Maximum Price Regulation No. 193 are those of the General Maximum Price Regulation, and the considerations involved in the issuance of Maximum Price Regulation No. 193 are, with the exceptions herein stated, the same as the considerations involved in the issuance of the General Maximum Price Regulation. Accordingly, the statements of the considerations involved in the issuance of the General Maximum Price Regulation and in the issuance of all applicable amendments thereto are, so far as applicable, hereby incorporated by reference in this statement."

Although the foregoing indicates that the Administrator had the parity provisions of the Stabilization Act in mind, and was explaining the manner in which they operated in the Regulations governing the sale of domestic distilled spirits, it is to be remarked that no section of the Emergency Price Control Act or the Stabilization Act requires that a statement of considerations, pertaining to a regulation governing commodities processed from agricultural commodities, recite the Administrator's conclusion that the regulation is not contrary to the provisions of any particular law, or that it accords with the parity provisions above mentioned.

■ The final contention of complainant is that, assuming Maximum Price Regula-

742

tion 193 to have been applicable to the sales in question, it was so vague and indefinite that it was impossible for complainant to ascertain that his sales were governed by the Regulation, and what his ceiling prices were. He, therefore, contends that the Regulation was in conflict with the due process clause of the Fifth Amendment. We have already held that the warehouse receipts for whiskey were governed by the Regulations heretofore mentioned, and they were not uncertain as to the extent of their coverage. With regard to complainant's alleged inability to compute or determine his maximum price because of the uncertainty and vagueness in the language describing the methods provided for in the Regulation for ascertaining the maximum prices for distilled spirits, a similar contention was disposed of adversely to complainant's claim in Collins v. Bowles, supra, where it was held that no such uncertainty existed in Maximum Price Regulation 193; that every contingency had been covered therein, and ample efficient, and practical means had been provided for determining such maximum prices.

In accordance with the foregoing, a judgment will be entered dismissing the complaint.