**ALAN LEVIN FOUNDATION v. BOWLES, Price Administrator.**

**No. 193.**

United States Emergency Court of Appeals.

Heard at Newark, N. J., Oct. 24, 1945.

Decided Dec. 5, 1945.

Before MARIS, Chief Judge, and MAGRUDER and McALLISTER, Judges.

Emanuel P. Scheck, of Newark, N. J. (Ervin S. Fulop, of Newark, N. J., on the brief), for complainant.

Benjamin Freidson, Atty., Office of Price Administration, of Washington, D. C. (Richard H. Field, Gen. Counsel, Jacob D. Hyman, Associate Gen. Counsel, and John O. Honnold, Jr., Chief, Court Review Price Branch, all of Office of Price Administration, all of Washington, D. C., on the brief), for respondent.

MARIS, Chief Judge.

The complainant is a New Jersey non-profit corporation organized for charitable purposes. It became the owner of 2,250 shares of the stock of The American Distilling Company. During the year 1943 The American Distilling Company instituted a plan for the distribution of packaged

whiskey to its stockholders. Under a trust indenture dated December 11, 1943 The American Distilling Company transferred warehouse receipts representing approximately 4,500,000 cases of whiskey to a trustee for the purpose of the sale of that whiskey to stockholders at prices equivalent to the distilling company's book costs. The complainant, by reason of its stock ownership, was entitled under the plan to purchase 36,000 cases of "Special Privilege" blended whiskey and 3,200 cases of "Special Prerogative" bonded whiskey. By the terms of the original indenture the right to purchase had to be exercised as to the "Special Privilege" whiskey no later than February 29, 1944 and as to the "Special Prerogative" whiskey no later than March 20, 1944.

By an amendatory indenture of February 23, 1944 the former purchase periods for both the blended and bonded whiskeys were extended to April 20, 1944 and later by order of court to May 20, 1944. The complainant's order for the blended whiskey was forwarded to the trustee on April 14, 1944 and was accepted by the trustee on April 18, 1944 and the bonded whiskey was ordered by letter dated April 17, 1944 received by the trustee April 21, 1944. The first shipment by the trustee was made on May 23, 1944. The shipments were made directly to retailers from whom the complainant had in the meantime received orders to buy the whiskey.

As we have indicated, the complainant's plan was to resell to retailers the whiskey purchased from the trustee. Under the laws of New Jersey persons engaged in the sale of whiskey to retailers must obtain a wholesaler's license at a fee of $2,000 per annum prior to the conduct of such business. Inquiry was made by persons connected with the complainant of the New Jersey Commissioner of Alcoholic Beverage Control as to the procurement of a wholesale license and they were informed that it was not the Commissioner's policy to issue new wholesale licenses to persons not presently in the liquor business. In a notice issued December 31, 1943 the Commissioner described a plan evolved by him to meet the needs of the stockholders of The American Distilling Company. Accordingly to this plan either the stockholder of the distilling company who desired to resell whiskey to retailers or the retailer to whom the whiskey was offered for sale could apply for a special permit which would be issue at a cost of 50 cents per case with a minimum charge of $5.00.

On February 4, 1944 the Price Administrator in a press release announced that an order would later be issued prescribing maximum prices applicable to resale of whiskey by stockholders of the distilling company. In the meantime the complainant sent out circulars to retailers offering the whiskey for sale at specified prices and stating that the purchasers must pay the license fee of 50 cents per case.

On April 15, 1944 the Price Administrator issued Order No. 7[1] under Maximum Price Regulation No. 193.[2] Sections 11 and 12 of the Order were as follows:

"Sec. 11. No person may add to or increase his ceiling prices for 'Special Privilege' or 'Special Prerogative' whiskey provided in this order, because of any sum paid for licenses, permits, clearing service, brokerage, finder's fees, shares of stock, stock transfer taxes, assignments of purchase privileges or orders or for other expense not specifically provided for under sections 2 through 6 of this order."

"Sec. 12. If a seller directly or indirectly requires a purchaser to make or furnish any payment in advance of delivery of 'Special Privilege' or 'Special Prerogative' whiskey, or the rendition of a service for which a ceiling price is established by this order, whether to the seller or to another person, the seller's ceiling price for that whiskey or service shall be reduced by an amount equal to interest at the rate of 5% per annum on the amount of the advance payment from the date the payment is made to the date on which the item is delivered or the service supplied, or the payment is refunded to the purchaser."

By letter dated June 6, 1944 the complainant requested an official interpretation as to its right to provide that the retailer absorb the New Jersey 50 cents permit fee. On June 9, 1944 an official interpretation was issued to the complainant advising that this fee must be absorbed by the seller of the whiskey and that the complainant would violate Order No. 7 if it required its purchasers to assume that fee in addition to the full maximum price prescribed by the Order. The complainant filed a protest against the provisions of Section 11 of Order No. 7 as so interpreted and also against Section 12 of the Order. The Price Ad-

---

[1] 9 F.R. 4118.    [2] 7 F.R. 6006.

ministrator denied the protest and the complainant filed in this court the complaint now before us.

The complainant's contentions insofar as they relate to Section 11 of Order No. 7 are on the one hand that the Price Administrator's interpretation thereof is erroneous and that properly interpreted the section would be inapplicable to sales such as those made by the complainant, and on the other hand that if the interpretation is proper the order is arbitrary and capricious.

The question of the interpretation to be placed upon the Administrator's regulations and orders is ordinarily not cognizable in this court. Marlene Linens v. Bowles, Em.App. 1944, 144 F.2d 874. If, however, the interpretation which the Administrator has adopted is alleged by a complainant to render invalid a regulation or order which if differently interpreted would be valid, it is obvious that we must pass upon the meaning of the regulation before we can reach the question of validity. Accordingly in the present case we must pass upon the question whether the provisions of Section 11 of Order No. 7 do mean what the Administrator says they mean before we can consider whether those provisions must be held to be invalid.

When we turn to an examination of the controverted provisions of Order No. 7 we reach the conclusion that the Price Administrator's interpretation of them is correct. Section 11 of Order No. 7 expressly prohibits the seller from adding any sum paid for license fees to his ceiling prices or increasing his ceiling prices thereby. The Price Administrator says that by necessary implication that section of the Order prohibits the increase in the ceiling prices to the retailer which results when the seller requires the retailer to make direct payment of the license fees to the State. This is a reasonable construction since, as we shall later demonstrate, it tends to make the application of the order uniform with that of Maximum Price Regulation No. 445 which fixed the prices at which retailers could purchase from regularly established wholesalers. We think that this construction is supported by the language of the Order. It would, of course, have been possible for the Price Administrator to have expressly provided in the Order that the seller must absorb any license fees

paid by the retailer for the privilege of purchasing the whiskey from the seller. We think, however, that this idea is implicit in the language used and that it was not necessary for the Price Administrator to make it explicit.

This brings us to the contention that Section 11 of the Order as interpreted by the Price Administrator is arbitrary and capricious. The first reason assigned by the complainant in support of this contention is that the Price Administrator attempts by his Order to supersede State requirements with respect to liquor licenses and license fees. The State of New Jersey, it argues, has exclusive authority as to the permit fees payable for the sale and purchase of whiskey in New Jersey and the State has determined that the purchaser may pay those fees, in which event the seller need not do so. Consequently, it asserts, the Price Administrator has no jurisdiction in the matter.

This contention is not sound. The New Jersey Alcohol Beverage Law, N.J.S.A. 33:1–1 et seq., is intended to regulate the manufacture and sale of alcoholic beverages. It is not directed to the purchase of such beverages. Thus the prohibitory section of the law[3] states:

"It shall be unlawful to * * * sell, possess with intent to sell * * * alcoholic beverages in this State, except pursuant to and within the terms of a license, or as otherwise expressly authorized, under this chapter * * *."

It is clear from the foregoing provision that the complainant was required to have a license or other authority under the law to sell its liquor in New Jersey. As we have seen, the Commissioner declined to issue it a regular wholesaler's license. The permits which he did issue were authorized by a provision of the law[4] which states:

"To provide for contingencies where it would be appropriate and consonant with the spirit of this chapter to issue a license but the contingency has not been expressly provided for, the commissioner may for special cause shown, subject to rules and regulations, issue temporary permits the fee for which shall be determined in each case by the commissioner and shall not be less than five dollars nor more than five hundred dollars, payable to the commissioner and to be accounted for by him as are license fees."

---

[3] N.J.S.A. 33:1–2.

[4] N.J.S.A. 33:1–74.

There can be no doubt that the permits thus issued under this statutory authority were intended to authorize the complainant to sell the whiskey to its customers and that they did not confer any authority on the customers to buy which the latter did not already have. The fact that the Commissioner permitted the complainant to arrange with its customers to pay the license fee is in our view quite immaterial. The important point is that Congress placed upon the Price Administrator the duty of establishing maximum prices for commodities, including alcoholic liquors, and that in carrying out this duty it was within the power of the Price Administrator to decide whether the cost of the complainant's whiskey to the buyer might in practice be increased by the amount of these permit fees or whether the amount of the fees must be absorbed by the complainant as seller. Compare United States Gypsum Co. v. Brown, Em.App. 1943, 137 F.2d 360, certiorari denied 320 United States 775, 64 S. Ct. 88, 88 L.Ed. 465.

■ The complainant asserts further that the Order is arbitrary and capricious because the transactions involved are isolated, are not in the regular course of trade and do not affect price levels, and that the Order as construed is not reasonably calculated to effect any of the stated purposes of the Emergency Price Control Act, 50 U.S.C.A. Appendix, § 901 et seq. Indeed, asserts the complainant, the Price Administrator is merely attempting to regulate private profit, which is not within the scope of his powers and duties.

■ The contention that because the transaction is small and isolated in comparison to the whole economy there is no need to subject it to price control is not sound. As we had occasion to state in Lincoln Savings Bank of Brooklyn v. Brown, Em.App. 1943, 137 F.2d 228, and United States Gypsum Co. v. Brown, Em.App. 1943, 137 F.2d 360, the mere fact that a price increase is small and will not in itself make an appreciable impression on the economy as a whole is not significant. It is the cumulative effect of millions of small increases in prices which starts the inflationary spiral.

■ The Price Administrator determined that it was necessary that the seller absorb the license fees in order to maintain a consistent structure of price control and to avoid an undue and discriminatory burden upon retailers. This determination was entirely reasonable. Maximum Price Regulation No. 445[5] which establishes maximum prices for wholesalers and retailers on the basis of stated percentage markups over cost permits wholesalers a 15% markup.

In a note to Section 5.3(b) (3) of the regulation the Price Administrator sets out a caveat that state license taxes may not be included as an item of cost. Consequently a New Jersey wholesaler who is regularly engaged in the business of selling distilled spirits and who pays an annual license tax of $2,000 could not pass this tax on to his retailer customers by including it in his cost upon which he calculates his 15% markup for the purpose of arriving at his maximum prices. In Order No. 7 the Price Administrator has provided for a consistent procedure to be followed by special sellers in the complainant's class. Section 2 of the Order enumerates the permissible items of cost and provides for a similar 15% markup. Section 11, as we have seen, prohibits the passing on to the retailer of the state license tax.

A retailer who purchases at ceiling price from the complainant is paying 50 cents more per case than if he had purchased the identical whiskey from a regularly established wholesaler unless the complainant is required to absorb the license fee. It follows that the Price Administrator was not concerning himself with the question of the amount of profit to be derived by the complainant but rather with the necessity of maintaining a consistent price structure for the commodities in question.

■ Perhaps the greatest emphasis is placed by the complainant upon what it deems to have been a misleading course of conduct by members of the Price Administrator's staff, which it asserts resulted in harm to it. This contention arises out of the following facts:

In January 1944 Maurice Levin, the complainant's predecessor in title, distributed a circular among retailers in which he offered the whiskey for sale at the price of $25.23 per case and in which he stated that the sale was "also subject to your payment of New Jersey ABC permit fee which I understand is 50¢ per case," and included a form of purchase order. The enforcement attorney in the Newark, New Jersey,

District Office objected to a ceiling price of $25.23 and said it should be $24.77. He said nothing about the 50 cents license fee. A new circular and purchase order were then sent out. By letter dated March 3, 1944 the. enforcement attorney objected to the manner in which the ceiling price was stated in the circular because it indicated that the price of $24.77 per case might be increased if the legal maximum prices were later increased but failed to indicate that it would also be reduced if the maximum prices were lowered. Nothing was said about the license fee. The complainant sold at· ceiling price. It was not until March 27, 1944, after the complainant had sold 35,800 cases of the two brands but before any had been delivered by the trustee to the retailers, that the enforcement attorney notified the complainant that the license fee had to be absorbed by it.

The essence of the complainant's contention is that the Price Administrator, acting through his district office price and enforcement attorneys, had by his failure to take exception to the complainant's plan of distribution, which openly required payment of the license fee by the buyers, given his approval to that plan. We cannot agree. The regulatory order for special sellers had not then been issued and consequently no one was in position to give approval to a plan of sale on the basis that the plan conformed to the provisions of the order. Moreover we cannot assume that district office price and enforcement attorneys have authority to bind the Price Administrator in the manner here alleged.

Before the issuance of Order No. 7 the complainant could have filed an application with the Office of Price Administration pursuant to the procedure provided in Maximum Price Regulation No. 193 for approval of its proposed maximum prices prior to making any sales or offers to sell. It is thus clear that the complainant was not compelled to rely upon conversations and correspondence with district office attorneys. Further we find no basis in fact in the complainant's assertion that approval may be spelled out of the documents and conversations upon which it relies. We conclude that the provisions of Section 11 of Order No. 7 are neither arbitrary nor capricious.

The complainant feels itself aggrieved by the alleged discriminatory application by the Price Administrator of the terms of Section 12 of Order No. 7 as between it and the trustee of the distilling company. The complainant points out that under Section 12 it was required to allow interest at the rate of 5% per annum upon advance payments received from buyers, from the date of each advance payment to the date of delivery of the whiskey. It states that the trustee has required it to make advance payments on the whiskey which it purchased, that deliveries were spread over a period of more than a year, but that the trustee has not been obliged to credit it with interest on its advance payments.

The Administrator points out that Section 12 does not exempt the trustee from its requirement of allowing interest on advance payments which he receives. The situation is that the ceiling prices established by Order No. 7 for sales by the trustee, even when reduced by the amount of the interest allowance provided for by Section 12, exceed the actual prices charged the complainant by the trustee. The fact that the complainant has been fortunate enough to purchase its whiskey at prices so much below the trustee's ceiling as not to call the interest provisions of Section 12 into play cannot form the basis for a conclusion that the section is arbitrary or capricious.

A judgment will be entered dismissing the complaint.