**DARLING & CO. v. FLEMING, Temporary Controls Administrator.**

**No. 366.**

United States Emergency Court of Appeals.

Heard at Chicago Dec. 2, 1946.

Decided Dec. 20, 1946.

Harold S. Walters of Chicago, Ill. (Carl M. Loos, of Chicago, Ill., on the brief), for complainant.

Israel Convisser, Atty., O.P.A., of Washington, D. C. (Richard H. Field, Gen. Counsel, Carl A. Auerbach, Associate Gen. Counsel, and William R. Ming, Jr., Chief, Court Review Price Branch, all of O.P.A., of Washington, D. C., and Homer Hilton, Jr., Atty., O.P.A., of New York City, on the brief), for respondent.

Before MARIS, Chief Judge, and McALLISTER and LINDLEY, Judges.

LINDLEY, Judge.

Complainant buys, cures and sells hides to tanners and manufacturers. On April 12, 1945 it protested the validity of, (a), Revised Price Schedule No. 9, issued February 17, 1942, (7 F. R. 1227), and particularly Section 1314.7(b), providing that tanners report to the Office of Price Administration certain information as to hides purchased, and, (b), Sections 1314.10 (k), 1314.11(d) and 1314.12(d), commonly termed the "mixed lot" provisions. A board of review recommended that the protest be denied and the Price Administrator approved the recommendation. Thereupon the complaint was filed in this court.

In view of the rule that this court's consideration is limited to questions presented in the protest, (Great Northern Co-op. v. Bowles, Em.App., 146 F.2d 269; Bowman v. Bowles, Em.App., 140 F.2d 974; Machen v. Bowles, Em.App., 139 F.2d 359), reference must be had to that document in order to ascertain just what we are called on to adjudicate. Complainant protested the validity of the reporting provision upon the ground that it forced a change of the established trade custom of inspection and acceptance of hides at the point of shipment to inspection and accept-

ance at the tannery, disregarded an industry custom of completing sales at the vendor's place of business, ignored the fact that hides are perishable commodities which may be damaged in transit and, in various other particulars, interfered with established trade customs and practices. It attacked the validity of the "mixed lot" provisions on the ground that, as interpreted by the Office of Price Administration, they resulted in assessment and collection of damages in excess of those authorized by the Emergency Price Control Act, 50 U.S.C.A.Appendix § 901 et seq., and ignored various trade customs and practices. Complainant prayed that the provisions be declared invalid for the reasons mentioned and, if not invalid, that they be interpreted as meaning that compliance at the shipper's place of business would be deemed complete final compliance. The same contentions are made here. With them and them alone are we concerned.

The reporting section, 1314.7(b) is as follows: "In the event that the hides or skins actually received by the tanner, or by the agent acting on his behalf, differ in any material respect from the description thereof contained in the invoice or similar document delivered in connection with the purchase, the tanner or such agent shall transmit to the Office of Price Administration on the same day the inspection of the hides or skins is made, a statement identifying the seller and the shipment and setting forth such difference."

We think it obvious that on its face this regulation imposes no duty upon complainant, subjects it to no damages or criminal penalties and affects it or its rights in no manner, but merely requires purchasers to report receipts of defective shipments. It was evidently promulgated pursuant to Sections 2(g) and 202(b), effective only as against purchasers, to provide an implement in aid of enforcement by bringing to the attention of the Administrator prima facie proof of violations. Complainant, unaffected as it is by the regulation, is in no position to attack its validity.

We think complainant has misconceived the legal effect of the regulation and groundlessly fears a result which can not possibly materialize. It erroneously assumes that the regulation alters its contractual rights and remedies and its trade practices and customs. But its rights are not prejudiced or jeopardized nor its trade practices altered; they are not affected in the slightest degree. It may, in any enforcement action, produce evidence that, as between it and its vendees, the hides it shipped were properly graded, inspected and priced before they left its plant. The respective rights of the parties while the goods were in transit, whether they were thereafter damaged while in carriage, whether they failed to comply with any implied warranty are all questions which the enforcement court will determine. As the Board of Review announced: "OPA's ability to invoke the sanctions of the * * * Act * * * depends in such case on its ability to demonstrate not that there was a discrepancy at the point of receipt, but a discrepancy at the point of shipment. * * * The seller is perfectly free to resist in the enforcement court the Administrator's assertion of a claimed discrepancy by showing, out of proof available to him, that in spite of the discrepancy between the hides and skins as received and as invoiced, the discrepancy was not present when the hides were shipped. No presumption of any kind arises from the reporting requirement imposed on the buyer. * * * The burden is then on the Administrator to take such action and adduce such proof as he can to demonstrate that a variation was present as of the time of shipment." The Administrator said in his opinion: "The Administrator is of the opinion that the practices of the Enforcement Department are irrelevant and immaterial to the determination of whether the Regulation is valid. The propriety of the Enforcement Department practice of which protestant complains is not a subject for consideration in a protest proceeding. It is, rather, one for determination by the enforcement court. * * * this section does not interfere with the private contractual relationship between the buyer and seller or attempt to impose on the seller any additional responsibility under the Schedule or the Emergency Price Control Act of 1942, as amended."

Complainant's suggestion that the reporting provision must be considered jointly with the mixed lot provisions is based upon erroneous reasoning. The former imposes a duty upon purchasers; the latter a duty upon vendors. Shippers' duties, governed by the latter, are in no wise dependent upon anything contained in the former.

There remains to be considered the attack upon the mixed lot provisions. They apply to complainant and it is subject to them. Sections 1314.11(d) and 1314.12(d), identical in terms, read as follows: "Hides, Kips, or Calfskins Sold in Mixed Lots. When hides, kips, or calfskins are sold in a lot containing more than one type or grade, the maximum price for the lot shall be the maximum price for that type or grade of hides, kips, or calfskins included in the lot which has the lowest maximum price, unless (1) the quantity of each type and grade is determined by actual inspection and each type and grade is (2) individually marked or physically separated so as to be easily identifiable, and (3) separately priced on the invoice or similar document." We do not intend to indicate sub silentio any opinion with regard to validity of the provisions except upon the precise point relied upon by complainant as framed in its protest and in its complaint in this court.

In his statement of consideration of August 20, 1943 (8 F.R. 11676) the Administrator said: "In order to prevent unscrupulous shippers from making difficult or impossible the inspection of shipments by the Office of Price Administration and by tanners, an additional requirement is added." And in that of January 10, 1945: "Prior to this amendment Revised Price Schedule 9, as amended, Hides, Kips and Calfskins, did not specifically require the physical identification or separation of hides or skins by types, classification and grade since such identification was customary and the need for such a requirement was not anticipated. For some time, however, some sellers have been shipping hides and skins without marking, separation or the use of any other scheme or device by which the several types, classifications or grades contained in a lot might be identified. Sample inspections were thereby rendered impossible, while inspections of entire shipments were impracticable by reason of labor shortages at the tanneries."

In other words, the Administrator found it necessary to issue 1314.11 and 1314.12 in order to prevent circumvention or evasion and to promote achievement of effective price control under authority of Sections 2(c) and (g). Complainant does not challenge this determination of necessity of action or offer any evidence to overcome it. It complains only that the regulation is so framed and construed that for its violation it will be subjected not to simple or treble damages but to damages 12 or 16 times the actual overcharge.

Again, we think, complainant misconceives its remedies. Whether complainant has complied with or violated the regulation; whether it has subjected itself to liability for damages and if so how much, are questions for the enforcement court. Congress endowed this court with no jurisdiction to determine whether a regulation is applicable to complainant or to interpret or construe it, so far as enforcement is concerned. Our only province in that connection is, in reviewing issues of validity, to "determine whether the regulation under attack may fairly be interpreted as applying to the complainant before we decide the question of validity which he raises." Conklin Pen Co. v. Bowles, Em. App., 152 F.2d 764; Alan Levin Foundation v. Bowles, Em.App., 152 F.2d 467.

Here there is no question that complainant is subject to the regulation; over and beyond that arises the question as to the proper interpretation of the regulation when applied to complainant's acts,—something we are not authorized to decide but of which the enforcement court has complete jurisdiction. That is matter bearing in no wise upon the question of validity but which may become most material in the enforcement action. Whether under the regulation properly interpreted, complainant has violated it and subjected itself to damages and if so the proper measure thereof is wholly for the enforcement court, bearing in mind that the statute forbids more than treble damages and that

those are justified only under certain specified circumstances.

Complainant has not offered any evidence that the mixed-lot provisions, which fix maximum prices, are unfair or inequitable generally or as applied to its sales. It has failed utterly to support its burden in this respect. Barnett v. Bowles, Em. App., 151 F.2d 77; Hienz v. Bowles, Em. App., 149 F.2d 277; Montgomery Ward & Co. v. Bowles, Em.App., 138 F.2d 669; Gillespie-Rogers-Pyatt Co. v. Bowles, Em. App., 144 F.2d 361.

From the nature of the rather limited scope of the attack upon validity of the mixed type provisions, it is clear that nothing urged in that connection would justify us in holding them invalid and that their interpretation as applied to complainant and complainant's rights and obligations is for the enforcement court.

Judgment will enter dismissing the complaint.