.CHIPPEWA COUNTY CO-OP. DAIRY v. CLARK, Director, Division of Liquidation, Department of Commerce.

No. 389.

United States Emergency Court of Appeals.

Heard in Madison Sept. 5, 1947.

Decided Oct. 8, 1947.

Matthew M. Wallrich, of Shawno, Wis., for complainant.

Harry H. Schneider, Atty., Department of Justice, of Washington, D. C. (Tom C. Clark, Atty. Gen., and Floyd L. Cook, Charles G. Mulligan and James A. Durham, Attys., Department of Justice, both of Washington, D. C., on the brief), for respondent.

Before MARIS, Chief Judge, and McALLISTER and LINDLEY, Judges.

LINDLEY, Judge.

Complainant, a farmers' cooperative engaged in procuring, distributing and processing milk, located in northwestern Wisconsin, having been sued in a treble-damage action in the United States District Court for alleged violations of Maximum Price Regulation No. 280 occurring between May 20 and December 30, 1943, in sales of condensed skim milk, after judgment against it in the trial court, brought this proceeding under Section 204(e) of the Emergency Price Control Act as amended, 50 U.S.C.A.Appendix, § 924(e). The complaint attacks the validity of Maximum Price Regulation No. 280 (7 F.R. 10144) upon the following grounds: (1) Being a freeze price regulation, it became void after sixty days; (2) the Administrator wrongfully promulgated the regulation without prior investigation and proclamation by the Secretary of Agriculture; (3) the order for enforcement violated the provision of Public Law No. 139, 78th Congress, 1st Session, 57 Stat. 522, that no part of the money then appropriated should be used to enforce any maximum price on any agricultural commodity including milk, unless the Secretary of Agriculture should have first determined and published for such commodity the prices specified in § 3(a) of the Emergency Price Control Act of 1942 as amended October 2, 1942, 50 U.S.C.A.Appendix, § 903(a); (4) the regulation works arbitrary, unreasonable discrimination under Section 1351.804; (5) the regulation is vague, ambiguous, conflicting and uncertain; (6) the attempted inclusion of complainant's sales within the regulation is unjustified because the regulation does not cover concentrated skim milk; (7) concentrated skim milk is not a food commodity processed from cows' milk composed of milk ingredients constituting more than 50 per cent by weight or volume.

Dairy products were first brought under price control on October 3, 1942, by Temporary Price Regulation No. 22 (7 F.R. 7914), which fixed maximum prices at the highest prices charged by individual sellers during the period from September 28, 1942 to October 2, 1942 for the same product. On December 3, 1942 this temporary regulation was superseded by Maximum Price Regulation No. 280 (7 F.R. 10144) now attacked. The freeze prices originally established by TPR–22 were continued in Maximum Price Regulation No. 280. The pertinent coverage of Maximum Price Regulation No. 280 is as follows: "(2) Milk products—Fluid milk and fluid cream sold at wholesale in containers other than bottles and paper containers, butter, cheese, condensed and evaporated milk, powdered milk, casein, malted milk powder *and any other food commodity which is processed or manufactured from cows' milk and composed of milk ingredients constituting more than 50 per cent by weight or volume, excluding ice cream.*" (Italics ours) On December 24, 1943, with the issuance of Maximum Price Regulation No. 289, (7 F.R. 10996), the Administrator replaced the freeze technique with specific dollars and cents ceilings for prices of manufactured dairy products and,

by Amendment 30 to Maximum Price Regulation No. 289, (9 F.R. 3649) specific prices were promulgated for concentrated skim milk.

Complainant contends first that Maximum Price Regulation No. 280 was not applicable to and did not cover sales of concentrated skim milk and that, if it was applicable, it can be rightfully construed only so as to permit manufacturers to increase their ceilings with each increase in the cost of bulk fluid milk, and that, if not so construed, it is invalid because it did not permit increases in ceiling prices on concentrated skim milk based on increased costs of bulk fluid milk. It is further contended in this connection that Section 3(e) of the Act was violated by the Administrator's institution of a treble-damage action without prior approval of the Secretary of Agriculture. At this point we must remember that the construction of Maximum Price Regulation No. 280, its applicability to complainant's sales, and whether the Administrator violated Section 3(e) by instituting a treble-damage action without prior approval of the Secretary of Agriculture are all questions of which the enforcement court has jurisdiction and which can be addressed only to that court for disposition in the performance of its functions. Otherwise this court would be called upon to exercise the function of reviewing the determinations of the trial court as to interpretation and construction of the Act and the regulations promulgated thereunder. Under the Act creating our authority, we have no such jurisdiction, except in a limited sense, where necessary to determine complainant's right to attack validity. Collins v. Porter, 1946, 328 U.S. 46, 66 S.Ct. 893, 90 L.Ed. 1075; Conklin Pen Co. v. Bowles, Em.App., 152 F.2d 764; Gordon v. Bowles, Em.App., 153 F.2d 614; Van Der Loo v. Porter, Em.App., 160 F.2d 110, certiorari denied 329 U.S. 774, 67 S.Ct. 193; Auerbach v. Fleming, Em.App., 161 F.2d 207, certiorari denied 67 S.Ct. 1742; Taylor v. Porter, Em.App., 156 F.2d 805, certiorari denied 329 U.S. 782, 67 S.Ct. 203. Thus the district court has found that concentrated skim milk is a food commodity processed from cows' milk composed of milk ingredients constituting more than 50 per cent of weight or volume and concluded as a matter of law that the price of concentrated skim milk was governed by Maximum Price Regulation No. 280 during the period when the alleged violations occurred. If those determinations are erroneous, that error can be reached only by appeal to the United States Circuit Court of Appeals for the Seventh Circuit. Complainant's claim that the regulation did permit increase in ceilings of manufactured dairy products based upon increased cost of raw milk as related to the contention of complainant that the regulation worked unlawful discrimination, will be mentioned in our discussion of validity.

Complainant contends that the regulation is not generally fair and equitable and is unduly discriminatory. Essential to determination of this question is a finding by us that it was unlawful to prohibit complainant from increasing its maximum price of such commodity at such times as the cost of whole milk increased. In this connection, the regulation is said to be unduly discriminatory because it froze complainant's maximum prices at a level lower than that of other manufacturers of concentrated skim milk.

The freeze technique of a ceiling price has been many times approved by this court. Philadelphia Coke Co. v. Bowles, Em.App., 139 F.2d 349; Gillespie-Rogers-Pyatt Co. v. Bowles, Em.App., 144 F.2d 361; Chatlos v. Brown, Em.App., 136 F.2d 490; Lakemore v. Brown, Em.App., 137 F. 2d 355; Interwoven Stocking Co. v. Bowles, Em.App., 141 F.2d 696; Madison Park Corp. v. Bowles, Em.App., 140 F.2d 316; Allied Foods v. Bowles, Em.App., 151 F.2d 449. The regulation is not illegal merely because it resulted in lower maximum prices for complainant than for some other sellers of the product. U. S. Gypsum Co. v. Brown, Em.App., 137 F.2d 803, certiorari denied 320 U.S. 799, 64 S.Ct. 427, 88 L.Ed. 482. This results from the fact that any freeze formula, if it reflects competitive as opposed to monopoly conditions, will establish varying maximum prices for individual sellers.

Complainant insists, however, that by virtue of Section 1351.804 of Maximum

Price Regulation No. 280 discrimination is brought about in view of the decision in Porter v. Consolidated Badger Cooperative, 7 Cir., 157 F.2d 835. This section provides that "If the maximum price established for any seller by this Maximum Price Regulation No. 280 is below the minimum price established for 'him by any marketing agreement order or license heretofore or hereafter to be issued by the Secretary of Agriculture pursuant to the Agricultural Marketing Agreement Act of 1937, as amended [50 Stat. 246], such minimum price shall become the seller's maximum price." 7 F.R. 10144, 1942. In view of the fact that Order No. 41 of the Secretary of Agriculture fixed the price of fluid milk, complainant asserts that this inevitably should result in a corresponding increase in the processed commodity. During 1942–1943, minimum prices for fluid milk were established under Order No. 41 in the Chicago area. On July 1, 1943 the Market Administrator revised the pricing formula of the order for fluid milk in such a manner as complainant claims to result in an increase in the cost of milk solids of 2 cents per pound. The order did not mention milk solids or processed milk commodities; it applied only to prices of fluid milk. Whether a producer was to be included within Order No. 41 was entirely optional upon his part. Those who voluntarily became subject to the order were known as "regulated handlers" and those who did not choose to come within the order, as "unregulated handlers."

In Porter v. Consolidated Badger Cooperative, supra, a regulated handler of milk and processor of skim milk had been sued in a treble-damage suit. We do not have the record in that case, but it appears that the enforcement court made a specific finding that, pursuant to Order No. 41, the price of skim milk to regulated handlers such as the then defendant, was increased in the equivalent of 2 cents a pound on skim milk solids. What the evidence to support this finding was we do not know, but the Court of Appeals, in affirming the judgment dismissing the action, could find no evidence in the record to challenge the finding. In view of the fact that the Administrator had stated to the court that if Order No. 41 had "raised the minimum price of condensed skim milk above the maximum provided for by the regulation, then the defendant was entitled to raise its prices," the Court of Appeals, finding no evidence to impeach the finding of the district court, in view of the admission of the Administrator, concluded that is could only affirm the district court. However, the effect of that decision upon the facts there presented was to enable the Badger company, a regulated handler, to sell its concentrated skim milk for more than the maximum price fixed for complainant, and this, says the complainant, is undue discrimination.

Obviously construction and interpretation of the regulation in the Badger case was one for the enforcement court, and, upon appeal, for the United States Circuit Court of Appeals. Whether the construction of those courts was erroneous is not for us to say. The Administrator has in that case a remedy in an application for review by the Supreme Court of the United States. As we said, in Taylor v. Porter, Em.App., 156 F.2d 805 at page 811, Section 204 of the Act which created this court and prescribed its powers has not conferred upon us any jurisdiction to review the proceedings of any other court. Errors, if any, committed by other courts in the application of the Emergency Price Control Act and the regulations issued thereunder to the facts of particular cases may be corrected only by recourse to the normal appellate procedure prescribed by law for such courts.

In the present case the district court found that the maximum prices of complainant were fixed by the freeze technique of Maximum Price Regulation No. 280 and sub silentio, the judgment has the effect of so construing Maximum Price Regulation No. 280 and subsection 1351.804 thereof as having no effectuality to increase the maximum price of complainant for concentrated skim milk simply because complainant may have found it necessary to pay more for fluid milk. Complainant was not a "regulated handler." It is entitled to no benefits under Order No. 41, for it, upon its own choice, is not within its terms. Disregarding any question as to whether complainant is within or without the Chicago area, where Order No. 41 was

applicable, the fact is that complainant voluntarily declined to accept the benefits of Order No. 41 and on oral argument asserted that it made this choice of its own volition because there were certain advantages as well as certain disadvantages entailed by a choice to accept or to reject the benefits of the order. Voluntarily, therefore, it has placed itself in one of the classes that saw certain benefits to be gained by not accepting the benefits of Order No. 41 as against a class who thought the advantages of Order No. 41 out-weighed the disadvantages and saw fit to come thereunder. We think that where there is a voluntary choice of whether one shall be included in one class or another there is no arbitrary discrimination between the two classes, even though their respective prices may as a result be different. So, irrespective of the correctness or incorrectness of the conclusion of the district court and the circuit court of appeals in the Badger case, complainant has voluntarily chosen to place itself in the contrasting class, made up of those who did not accept the benefit of Order No. 41 but preferred to accept what they deemed the advantages to be gained by not coming within the order. There is no proof in this record of any facts sufficient to make of this arbitrary discriminatory classification, for we do not know what advantages the complainant achieved by refusing the benefits of Order No. 41. Nor does the record disclose the disadvantages it might have incurred had it accepted the benefits of that order. In the absence of such evidence we can only assume that complainant may have been much better off outside of the order than within it. At any rate we certainly would not be justified in saying that the evidence in such status justifies a finding of arbitrary discrimination.

■ In this respect it should be observed also that complainant has not exhausted its administrative remedies. If it deemed its freeze price inequitable and unfair, it had the right of recourse to the provisions for adjustment contained in Sections 1351.814 and 1351.815 of the regulation. (8 F.R. 3003). Under these, it could have applied to the Administrator for an increase in prices and submitted evidence to justify such adjustment and, in case the Administrator acted, in the opinion of the complainant, unjustly or arbitrarily, this court, was open to review the validity of the regulation in the light of such action.

■ It is clear, we think, that complainant's remedy of adjustment was a part of its proper proceeding for administrative relief. Notwithstanding this, in this proceeding, complainant has attempted to assert such hardship. The record does not support its assertion in this respect, however, even if we had jurisdiction, despite the failure to exhaust administrative remedies. We have repeatedly said that individual profits are not guaranteed by the Act. Moreover, the facts present no adequate showing of hardship. Complainant does not disclose what it paid for fluid milk or its profit upon concentrated skim milk. Its income tax returns are wholly unconvincing, for they reveal no figures that would justify us in saying that the ceiling price of concentrated skim milk was too low. Furthermore the very substantial increase in certain expenses deducted from gross income such as salaries is wholly unexplained. Nor do we have any explanatory evidence as to depreciation. So, even were this the proper time and place to present an application for relief from insufficient maximum prices, the facts presented are insufficient to justify relief in that respect.

■ Complainant asserts that Maximum Price Regulation No. 280 violates Section 2(a) of the Act, 50 U.S.C.A.Appendix, § 902(a), inasmuch as, as it claims, the Act limits the duration of freeze regulation to a period of 60 days. True it is that Section 2(a) provides that whenever the Administrator deems it necessary or proper in order to effectuate the purposes of the Act, he may, without regard to the specific provisions governing issuance of permanent regulations, promulgate temporary regulations establishing as maximum prices those prevailing with respect to a commodity within five days from the date of issuance but that such temporary regulation shall be effective for not more than 60 days. Thus the original regulation No. 22 was a temporary maximum price regulation. Before

60 days had expired, however, the Administrator replaced this with a permanent regulation, namely No. 280 which also follows price freeze technique. Complainant's argument, in effect, is that the Administrator never had no authority to issue a permanent regulation employing freeze technique even though it met all the standards prescribed by the Act. Earlier contentions to this effect have been submitted to this court and in each instance rejected. Consolidated Water Power & Paper Co. v. Bowles, Em.App., 146 F.2d 492; Madison Park Corp. v. Bowles, Em.App., 140 F.2d 316 and cases cited in footnote 8 therein. See Philadelphia Coke Co. v. Bowles, Em.App., 139 F.2d 349. We see no occasion to enlarge upon what we have said in these decisions.

■ Complainant attacks the regulation as violative of Section 2(a) for the further reason, as it contends, that the Administrator failed to consult with representative members of the industry prior to the issuance of the regulation on the merits. We are without authority to pass upon the objection, for it was included in neither the complaint nor complainant's application for leave to file a complaint in this court. Under such circumstances complainant is precluded from urging it now. Fournace v. Bowles, Em.App., 148 F.2d 97, certiorari denied 325 U.S. 884, 65 S.Ct. 1573, 89 L.Ed. 1999; Taub v. Bowles, Em.App., 149 F.2d 817, certiorari denied 326 U.S. 732, 66 S. Ct. 39, 90 L.Ed. 435.

Complainant urges that the Administrator violated Section 3(e) of the Emergency Price Control Act in that he did not secure the approval of the Secretary of Agriculture prior to institution of treble-damage action under Section 205(e), 50 U.S.C.A. Appendix, § 925(e), and, collaterally to this contention, complainant urges that the Secretary of Agriculture did not investigate and proclaim that the maximum price for concentrated skim milk would reflect parity to milk producers as required by the National War Agencies Appropriations Act of 1943 and the Second Deficiency Appropriation Act of 1944, 58 Stat. 597. Section 3(c) of the Emergency Price Control Act as amended provides that no action shall be taken by the Administrator with respect to any agricultural commodity without the prior approval of the Secretary of Agriculture; except, however, that the Administrator may take such action as may be necessary under Section 202, 50 U.S.C.A. Appendix, § 922, and Section 205(a) and (b) to enforce compliance with any regulation. The later National War Agencies Appropriation Act of 1943, Public Law 139, 78th Cong., 1st Session, provides that no part of the appropriation there made shall be used to enforce any maximum price on any agricultural commodity, processed or manufactured in whole or in part from any agricultural commodity, unless the Secretary shall have determined and published for such agricultural commodity the price specified in Section 3(a) of the Emergency Price Control Act as amended by Public Law No. 729, 56 Stat. 765, or until the Secretary shall have determined after investigation and proclamation that the maximum price or prices of such commodities will reflect to the producer a price in conformity with Section 3(c) of said Act. It seems obvious that whether the complainant was in a position to maintain the enforcement action is a question purely for the enforcement court. If that court erred in finding that complainant was entitled to bring the suit, the proper forum for review is the United States Circuit Court of Appeals for the Seventh Circuit and not the Emergency Court of Appeals. We are concerned only with the validity of the regulation. Illinois Packing Co. v. Bowles, Em.App., 147 F.2d 554.

■ Complainant contends that the maximum price established failed to reflect the minimum price standards to the producers of fluid milk as fixed by Section 3(a). This raises the serious question of whether the complainant, in its capacity as a manufacturer, has the requisite legal interest to raise this objection. See Allied Foods v. Bowles, Em.App., 151 F.2d 449; Parker v. Fleming, 1947, 329 U.S. 531, 67 S.Ct. 463. However, we think the record discloses no facts that would justify us in finding that the Administrator disregarded the requirements of Section 3 of the Act. On the contrary, the record discloses that he compared the maximum prices established by that regulation with the standards of Section 3 and specifically determined

that the prices fixed would "reflect to the producers of the commodities covered by this regulation prices equal to or in excess of the parity or comparable prices and the highest prices between January 1, 1942 and September 15, 1942." Moreover the Secretary of Agriculture has found and declared that the average prices of milk received by producers from May to December, 1943, was at all times in excess of parity prices. Inasmuch as complainant has failed to overcome this showing, its suggestions in this respect are without merit. Montgomery Ward & Co. v. Bowles, Em.App., 138 F.2d 669 and Em.App., 147 F.2d 858; Powers & Urick v. Bowles, Em.App., 144 F.2d 491.

■ Complainant contends that the language of the regulation is so uncertain and vague as to make it invalid. Section 1351.-801, as we have seen, covers not only milk but also any other food commodity which is processed or manufactured from cows' milk and composed of milk ingredients constituting more than 50 per cent by weight or volume, excluding ice cream which is covered by another regulation. Complainant insists that it is unable to determine from this language that condensed or concentrated skim milk is within the regulation. After careful consideration we are unable to find any basis for uncertainty in this language. Concentrated skim milk is a processed milk product resulting from the separation of cream and milk and concentration of the residue into a semi-solid product, thus bringing it clearly within the words "food commodity which is processed or manufactured from cows' milk and composed of milk ingredients constituting more than 50 per cent by weight or volume."

We conclude that there is nothing to justify a finding of invalidity of the regulation. Judgment will enter dismissing the complaint.