## CURTISS CANDY CO. v. CLARK.

### No. 424.

United States Emergency Court of Appeals.
Heard at Chicago, Dec. 16, 1947.

Decided Jan. 28, 1948.

Rehearing Denied March 5, 1948.

Peter B. Atwood, of Chicago, Ill. (Irwin N. Walker and Walker, Atwood, Zurowski & McFarland, all of Chicago, Ill., on the brief), for complainant.

Josephine H. Klein, Sp. Atty., Dept. of Justice, of Washington, D. C. (Tom C. Clark, Atty. Gen., T. Vincent Quinn, Asst. Atty. Gen., and Floyd L. Cook and Charles G. Mulligan, Attys., Dept. of Justice, both of Washington, D. C., on the brief), for respondent.

Before MARIS, Chief Judge, and McALLISTER and LINDLEY, Judges.

LINDLEY, Judge.

Complainant, a leading manufacturer and vendor of packaged food, including 5¢

candy bars, filed its complaint in this court after denial of its protest. An enforcement action is pending, charging that complainant manufactured, sold and delivered candy bars after May 11, 1942 materially reduced in size and weight to less than the lowest size and weight of those sold in March 1942, so that purchasers received approximately 6% less candy than they did during March 1942, without any corresponding reduction in the price charged therefor, whereby complainant increased the price of commodities sold and delivered by it in excess of the highest price charged by it during the month of March 1942.

Complainant attacks the validity of two regulations upon which the government relies in the enforcement suit. General Maximum Price Regulation issued November 9, 1942 (7 F.R. 9244) provided, as to foods, that the seller's maximum price for any commodity should be the highest charged by it during March 1942. Maximum Price Regulation 262, having to do with peanut bars, issued December 14, 1942 (8 F.R. 262), Sections 1351.955 (b) .956, .965 and .966, prescribed a formula in effect reaching the same result as General Maximum Price Regulation. Consequently, for the purposes of this decision, the applicable regulations established maximum prices for complainant's candy bars as the highest price charged during March 1942.

■ Complainant attacks the interpretation of the regulations by the Administrator to the effect that they prohibited the reduction of the weight of candy bars below the lowest actual running weight thereof during March 1942, regardless of any statement as to weight on the labels of the packages, unless the reduction of weight was accompanied by a corresponding reduction in the seller's March 1942 price. This interpretation was approved by the Circuit Court of Appeals for the Eighth Circuit, in Brown v. Mars, Inc., 135 F.2d 843, 849, an enforcement action, wherein the decision of the same District Court which has jurisdiction of the enforcement suit now pending against complainant was reversed. The court said: "That these products are sold by piece and not by weight is of no effect. Candy is a food. Weight is one measure of the amount of food. Many kinds of foods are sold by piece or by package. Any decrease in weight of such without a corresponding decrease in price has clearly the same effect, on the purchaser and on the seller, as an increase in price—less is sold for the same money. The degree of decrease in weight with resultant effect of increase in price is not material for reasons hereinbefore stated. That taste is the purchasing incentive is not material—the Act has no concern with why the purchaser buys but only with whether he pays more than the established maximum price." This was in substantial agreement with the Administrator's interpretation: "Decreases in size, where the new size replaces the old, and especially where it is offered for sale to the same purchasers, must in all cases be accompanied by a proportionate decrease in price unless, as will rarely be the case, the seller can establish that he is meeting a distinctly different market demand. * * * Manufacturers who are in doubt as to the application of this standard should apply for a section 3 (b) order or, if circumstances of hardship or out-of-lineness are present, in the alternative for adjustment under Section 18. * * * Where the proportionate increase or decrease results in a unit figure containing a fraction of a cent, the manufacturer or wholesaler must multiply such fractional per unit figure by the number of units in each order."

The scope of our authority on matters of interpretation is discussed in Alan Levin Foundation v. Bowles, Em.App., 152 F.2d 467; Marlene Linens v. Bowles, Em.App., 144 F.2d 874; Conklin Pen Co. v. Bowles, Em.App., 152 F.2d 764; Veillette v. Bowles, Em.App., 150 F.2d 862; Darling & Co. v. Fleming, Em.App., 158 F.2d 387; Collins v. Fleming, Em.App., 159 F.2d 426; Van Der Loo v. Porter, Em.App., 160 F.2d 110; Superior Packing Co. v. Clark, Em.App., 164 F.2d 343. What we have announced must be construed in the light of the language of the Supreme Court in Collins v. Porter, 328 U.S. 46, 66 S.Ct. 893, 894, 90 L.Ed. 1075, where the court said: "The Emergency Court sustained the challenged regulation. It refused to pass on the applicability of the regulation to the petitioners. It left that question to the District Court before

which the treble damage suit is pending. Had petitioners' contentions come before the Emergency Court through the protest proceedings under § 203 (a) [50 U.S.C.A. Appendix, § 923 (a)] that court would have adjudicated both issues. Conklin Pen Co. v. Bowles, Em.App., 152 F.2d 764; Collins v. Bowles [Em.App., 152 F.2d 760], supra. And in the event that the Emergency Court had found the regulation inapplicable and such decision had been made before a judgment was rendered in the District Court, its ruling would be binding upon the District Court." Here the District Court has, in two interlocutory memorandum orders in the enforcement action, adopted the construction of the Court of Appeals for the Eighth Circuit in the Mars case, as, indeed, it was bound to do, as it is located in that circuit; but it has made no final decision upon the merits. Obviously it must follow the United States Circuit Court of Appeals' decision on final hearing. We think, in this situation, that it may well be our duty, in order to afford complainant a full remedy, to accept the interpretation of the regulations which the district court is thus in duty bound to adopt and apply in the enforcement suit now pending against complainant.

If, however, the question of interpretation is open to us, we think there can be no question but that the Court of Appeals correctly decided the issue. We agree that the Administrator adopted the correct standard, in determining whether a seller of candy bars had adhered to his ceiling price as fixed by the regulations in question, in holding that he should determine whether a smaller package is being delivered at the same price. We are dealing with facts, not theories. What was actually sold to the customer for a certain price in March 1942, the vendor was bound to sell thereafter at the same price. The label weights admittedly were not accurate statements of the actual contents of packages. Indeed, the actual weights at that time universally exceeded the label weights. What was actually being delivered can be the only dependable test. The effort to restrain inflation by maintenance of existing March 1942 levels would have been easily defeated if, at their pleasure, ven-

dors of candy bars had been at liberty to reduce the actual amount of candy in the package and still sell it at the same price.

Inasmuch, therefore, as the regulations have been correctly interpreted, we reach the further question of whether, as thus interpreted, they are valid. Complainant asserts that they are arbitrary and capricious in that they establish maximum prices for candy bars by reference to their base period actual weights rather than by their label weights. It directs our attention to the fact that the industry advisory committee, after the expiration of the period during which the alleged violations occurred, recommended that the ceiling price should be fixed by adoption of the March 1942 lowest wrapper weight designation. In other words, the committee recommended that the base period label weight should be accepted as the actual average weight. It seems obvious that such a provision would have simply amounted to a price increase in view of the industry's universal custom of putting more in the package than appeared on the label. It appears that complainant's bars ordinarily contained from 10 to 28% more weight than the label indicated. Complainant designates this excess a gratuity, but the fact remains that it was and had been the custom, in selling candy bars, to include more than the label indicates. Whether it was a gratuity or not, the truth is that it constituted an additional amount of candy sold at the March 1942 price. The amount was reduced; automatically the price was raised. Absar Realty Co. v. Bowles, Em. App., 149 F.2d 654; Johnson v. Bowles, Em.App., 145 F.2d 166.

In this connection complainant urges that tolerances are not recognized by the regulations and that to ignore their existence is arbitrary and capricious. The regulations say nothing about tolerance. The interpretation of the Administrator and of the Circuit Court of Appeals for the Eighth Circuit does not touch this question; and, in our opinion, it is strictly one for the District Court and upon appeal by the Court of Appeals for that Circuit. In other words, whether the Administrator seeks to recover for violation without allowance of reasonable tolerance is a ques-

tion purely for the enforcement court which must decide from the evidence whether the respondent gave proper consideration to legitimate tolerances. That is a question arising upon the proof, which is not presented to us.

■■ It is asserted that the regulation is not generally fair and equitable. We find no evidence in the record impelling us to such a conclusion. There is some evidence of cost increases after the institution of price control, but a showing of cost increases without more does not demonstrate that a maximum price regulation is not generally fair and equitable. Philadelphia Coke Co. et al. v. Bowles, Em.App., 139 F.2d 349; Interwoven Stocking Co. v. Bowles, Em.App., 141 F.2d 696. Furthermore, under the regulations, as the Administrator announced, if hardship to manufacturers occurred, they had a right to adjustment under Section 18; and, as we have previously declared, manufacturers must take advantage of their opportunity for administrative relief before they may complain. Chippewa Co-Operative Dairy v. Clark, Em.App., 163 F.2d 753, at page 758.

■ We should observe in this connection that the evidence discloses that during the period involved in the enforcement action, complainant's net profits were higher, both as a matter of dollars and cents and as a percentage of sales, than in any of the years from 1936 through 1939. There is no evidence as to industry profits generally but, in the absence of contradictory evidence, we must assume that complainant was representative of the industry. In other words, the record is wholly insufficient to show that the regulations are generally unfair or inequitable. Gillespie-Rogers-Pyatt Co., Inc., et al. v. Bowles, Em.App., 144 F.2d 361.

■ Complainant insists that General Maximum Price Regulation was valid only as a temporary regulation limited to 60 days. That it was not a stopgap appears from the language of this court in Philadelphia Coke Company et al. v. Bowles, supra. That the Administrator had authority to issue it as a permanent regulation is clear from our opinion in Chippewa County

Co-Operative Dairy v. Clark, Em.App., 163 F.2d 753, decided October 8, 1947.

■ Complainant urges also that the regulations are invalid by reason of the Administrator's alleged failure to give consideration to the recommendation of the candy bar manufacturers' industry advisory committee. It should be remembered that that committee's activities occurred after the enforcement period and that the recommendations were made in August, 1944, several months after the period involved in the enforcement action. More than that, however, there is no evidence that the Administrator failed to give consideration to the recommendation. In fact, his opinion indicates that, though he had given the recommendation of the advisory committee consideration, he declined to follow it. And we think he did so rightfully, for that recommendation was that label weights should be accepted as the actual weights, which could not be done without doing violence to the facts.

■■ We find no evidence to sustain complainant's argument that, under Section 2 of the Act, 50 U.S.C.A.Appendix, § 902, the regulations, as interpreted, compel changes in business practices in violation of Subsection 2 (h). Indeed, the evidence to the contrary is convincing. The regulations did not disturb existing practices; rather they sought to maintain them. The candy bar manufacturers had been delivering bars of an average weight at the fixed sum of 5¢; the Administrator sought merely to preserve that practice and to fix the prices and weights accordingly,—to perpetuate the existing practice. This was no violation of the provision of Section 2 (h). Vanlandingham v. Clark, Em.App., 163 F. 2d 896.

■■ Complainant charges discrimination as defined by this court in a number of decisions and asserts that this discrimination constitutes deprivation of property without due process of law within the meaning of Miller v. Standard Nut Margarine Co., 284 U.S. 498, 52 S.Ct. 260, 76 L. Ed. 422; Yick Wo v. Hopkins, 118 U.S. 356, 6 S:Ct. 1064, 30 L.Ed. 220; Sunday Lake Iron Co. v. Wakefield, 247 U.S. 350, 38 S.Ct. 495, 62 L.Ed. 1154. Invalid dis-

crimination cannot be established by showing generally that other groups have been differently treated. There must be evidence that the group complaining has been affected unfairly and inequitably and that no reasonable basis exists for the difference in treatment accorded the various groups. Vanlandingham v. Clark, supra; Pfeiffer Brewing Co. v. Bowles, Em.App., 146 F.2d 1006, certiorari denied 324 U.S. 865, 65 S.Ct. 914, 89 L.Ed. 1421. We find no evidence of this character. Though complainant insists that the regulations governing other packaged food commodities were more liberal, upon examination, it is found that each of those situations differs from that confronting us. In several, they involved dollars and cents regulations. In others, the regulations established maximum prices in a base period for a specified amount per ounce, or other unit of weight, in which the Administrator considered the minimum label weight. But these regulations were restrictive rather than liberalizing in character. Indeed the evidence fails to show that any other industry or group of sellers was permitted to increase prices as complainant says it should have been, that is, by ignoring actual weights. Furthermore, there is no proof that the facts were such that the Administrator was required to establish precisely the same kind of price-fixing regulations for candy bars as he did for soap and other articles.

■ Complainant contends that it and Mars are the only candy manufacturers who have been sued. This is clearly immaterial. We have no control of the policy of the Administrator as to whom he should assert enforcement actions against. We do not know that other candy manufacturers have violated the regulation. We do not know that the Administrator would be justified in suing others. All of these are questions wholly beyond the scope of our authority.

■ Complainant insists that the regulations are invalid because of the provisions of Section 3 of the Emergency Price Control Act as amended, 50 U.S.C.A.Appendix, § 903, and the Stabilization Act of 1942, 50 U.S.C.A.Appendix, § 961 et seq., in that the statutes required that processed agricultural commodities be priced at levels which would reflect certain prescribed minimum prices to the producers of agricultural commodities. There is no showing that producers were not receiving the proper prices. As we said in Allied Foods et al. v. Bowles, Em.App., 151 F.2d 449, 452: "But Section 3 of the Act is not concerned with * * * processors, but only with the growers of the commodity. If the latter receive parity, there is no requirement under Section 3 that the Administrator concern himself with the prices received by the processors." We can not assume that producers were not receiving the proper prices, even if the complainant has a right to complain, as to which we expressed our doubt in Chippewa County Co-Operative Dairy v. Clark, supra.

■ Complainant contends further that the Stabilization Act of 1942 and Executive Order No. 9250, 50 U.S.C.A.Appendix, § 901 note (7 F.R. 7871) require the prices to be fixed as of the date of September 15, 1942. Section 1 of Title IV of Executive Order No. 9250 reads as follows: "The prices of agricultural commodities and of commodities manufactured or processed in whole or substantial part from any agricultural commodity shall be stabilized, so far as practicable, on the basis of levels which existed on September 15, 1942 and in compliance with the Act of October 2, 1942." As we understand it, complainant's argument is that any prices received by sellers of processed agricultural commodities on September 15, 1942, whether in conformity with then existing applicable regulations or not, automatically, by operation of Executive Order No. 9250, became legal on October 3, 1942. We do not so construe the order. Price regulations in effect on September 15, 1942 were valid unless they had been specifically declared invalid. Surely it was not the intention that all freeze price regulations fixing a base period prior to September 15, 1942 should be overthrown and all prices increased to those of September 15, 1942. Surely such was not the intention of the Congress under the Stabilization Act or of Executive Order No. 9250.

■ Complainant's objections to the regulations because of certain provisions of certain appropriation acts are without

merit. It has no standing in this cause justifying any objection under a statute which merely prescribes limitation upon the use of public funds. Commonwealth of Massachusetts v. Mellon, 262 U.S. 447, 43 S. Ct. 597, 67 L.Ed. 1078; Alabama Power Co. v. Ickes, 302 U.S. 464, 58 S.Ct. 300, 82 L. Ed. 374; Perkins v. Lukens Steel Co., 310 U.S. 113, 60 S.Ct. 869, 84 L.Ed. 1108.

We have examined carefully all of complainant's contentions. We think they are either without merit or are such as to be cognizable only in the enforcement court.

Judgment will enter dismissing the complaint.